**Roosevelt HARRIS, Leo Pitts, Gloster Harris and Herbert Britt, Plaintiffs-Appellees,**

v.

**PLASTERERS AND CEMENT MASONS LOCAL NO. 406, Defendant-Appellant.**

No. 77–1658.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1978.

Decided March 10, 1980.

Bernard M. Mamet, Chicago, Ill., for defendants-appellants.

Steven A. Johnson, Gary, Ind., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and PELL and WOOD, Circuit Judges.

FAIRCHILD, Chief Judge.

Defendant Local No. 406 appealed from a judgment for plaintiffs in the amount of $23,591.

Plaintiffs are four cement finishers, and were members of an International Union (Operative Plasterers' and Cement Masons' International Association). Plaintiffs Roosevelt Harris, Gloster Harris, and Herbert Britt were members of Local No. 101 at South Bend, Indiana. Plaintiff Leo Pitts was a member of Local No. 16 at Kalamazoo, Michigan.

In April, 1973, Batteast Construction Company was performing a contract at Gary, Indiana, within the jurisdiction of Local No. 406. Batteast employed six cement finishers, members of Local No. 406. They had a collective bargaining agreement. A dispute arose and the cement finishers left the job. Plaintiffs had been working for Batteast at South Bend, and at Batteast's request came to work on the Gary job. They stayed until the job was completed in November, 1973.

In May, 1973, Local No. 406 fined each plaintiff $500.00. Plaintiffs did not pay the fines and did not appeal. In accordance with the constitution of the International Union, they were, for non-payment, expelled from membership in the International and the Locals of which they had been members.

In April, 1974, plaintiffs brought this action against the International Union, and Locals No. 406, No. 16, and No. 101. Jurisdiction is founded on 29 U.S.C. § 412 (Action for infringement of rights secured by 29 U.S.C. §§ 411–415, "Bill of Rights of Members of Labor Organizations"). The theory of the action was that the fines were unlawfully imposed because the written notice of charges was inadequate, and the hearing was held May 22, 1973 in the absence of plaintiffs, notwithstanding the granting of a continuance to May 29; that the court could reach the merits because requests for information concerning appeal procedures were denied until the time for appeal had expired; that expulsion was unlawful because, based on improperly imposed fines and expulsion, had caused loss of wages and employment and other damages.

In 1975 plaintiffs agreed to settle with the International Union and Locals No. 16 and No. 101. Plaintiffs were reinstated to membership upon payment of one month's dues, the fines were dropped, and plaintiffs agreed to dismiss the action, except against Local No. 406.

After bench trial of the action against Local No. 406, the district court entered findings and judgment in favor of plaintiffs.

I

Defendant argues that this action under 29 U.S.C. § 412 could not be brought against Local No. 406 because plaintiffs were not members of that organization.

Plaintiffs were, however, members of the International Union as well as the other locals. The constitution of the International provided for Traveling Cards so that members of one local might properly work in the jurisdiction of another local. It also provided, "Members shall be under control and jurisdiction of the Local Union under which they are working, and can be fined by said Local Union for violation of working rules, whether their card has been deposited or not; said fine to belong to the Local Union which placed the fine." The constitution also provides that failure to pay within a specified period shall cause the member to be dropped from the roll.

Section 412 authorizes an action by any person whose rights secured by the provisions of the subchapter have been infringed by a violation of the subchapter. Section 411(a)(5) forbids disciplinary action against a member unless he has been served with written specific charges, given a reasonable time to prepare his defense, and afforded a full and fair hearing.

It does seem that plaintiffs were not members of Local No. 406, the organization which conducted the proceeding and imposed the fines. Local No. 406 had jurisdiction, however, under the constitution of the International, and by its terms fines imposed by Local No. 406, if unpaid, terminated plaintiffs' membership in the International and the other locals. Plaintiffs were members of the latter organizations, which had, through the constitution, delegated disciplinary power over members to any local under whose jurisdiction a traveling member worked.

■ We have no difficulty in concluding that Section 411(a)(5) applied to proceedings of Local No. 406 to discipline persons in the position of plaintiffs, and that if Local No. 406 violated Section 411(a)(5), Section 412 gave plaintiffs a right of action.

*Gavin v. Structural Iron Workers Local No. 1, etc.*, 553 F.2d 28 (7th Cir. 1977), relied on by defendant, is not in point. In *Gavin*, members of the affiliated international and other locals were claiming the rights of membership in the defendant local. Here, however, plaintiffs are seeking redress from defendant local for injuries to their rights of membership in the affiliated international and other locals, caused by improper acts of defendant local in exercising power delegated to it by the constitution of the International.

## II

Defendant has maintained both in the district court and here that plaintiffs failed to exhaust internal appellate remedies.

The constitution of the International provides for an appeal to the General Executive Board within thirty days from the date a fine is "registered" by International Headquarters. No appeal was taken.

The constitution of the International prohibits resort to court proceedings until all internal remedies are exhausted. Section 411(a)(4) permits a union to require a member to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) before instituting legal proceedings. Plaintiffs offered no proof that the appellate remedies provided in the constitution would not be reasonable and prompt.

■ Plaintiffs claimed and the district court found that by reason of the acts of Local No. 406, the plaintiffs were unable to exhaust their internal remedies.

Apparently this finding is based upon testimony of Mr. Schmoll that at a time he could not remember, he asked Mr. Panepinto, business agent of Local 406, for a copy of the Constitution and Bylaws. Mr. Panepinto refused, but suggested that Schmoll contact the office of Mr. Mamet, the union attorney. Schmoll did not ask Mamet's office for a copy.

Schmoll was a member of the law firm headed by William Spangler. The Spangler firm represented plaintiffs at all times after May 21, 1973. Mr. Spangler wrote Panepinto October 24, with a copy to Mamet, asking for a copy of the constitution. In response, Mamet sent a copy November 2. As early as June 12, Mr. Spangler had written Panepinto telling him among other things that plaintiffs would appeal. The thirty days for appeal apparently expired June 30.

The only indication of any obstruction was Panepinto's refusal of a copy of the constitution. There is no evidence of the date of that refusal, and the refusal was accompanied by referring Mr. Schmoll to the office of counsel. When a request was directed to counsel, he supplied the document within ten days, although both the request and the response occurred several months after expiration of the time for an internal appeal.

Under the circumstances, we consider the finding that Local 406 prevented resort to an internal appeal clearly erroneous.

## III

The district court also concluded that plaintiffs were not required to exhaust their internal remedies because the action of Local 406 was void as a matter of law. This conclusion rests in turn upon a conclusion that the written charges were inadequate and the finding that Local 406 had agreed to continue the hearing, but did not honor the agreement.

The notice charged that each plaintiff had violated a particular section of the constitution of Local No. 406, and three specified sections of the constitution of the International. Each section was quoted in full. The latter three pertained to requirements applicable to working within the jurisdiction of one local by members of a different local, and the section of the constitution of Local No. 406 prohibited, among other things, action that would tend to undermine the working rules, wages, and conditions of other members. Although the notices did not set forth facts, the sections quoted were obviously applicable to the situation in which plaintiffs found themselves.

Everyone involved knew there was a dispute between Batteast Construction Company and Local No. 406 and that Batteast transferred plaintiffs to Gary to replace cement finishers from Local No. 406 who were on strike.

Mr. Zaremba, an attorney with the Spangler firm, spoke with someone at Local No. 406 on May 21 or 22, and recalled his understanding that plaintiffs were to be tried for "working in the Local 406 area and not contacting the business agent and tendering their dollar dues for being out of state or out of the district." The testimony at trial was in agreement that Local No. 406 was not interested in collecting money, but there was a dispute whether the required advance notice had been given.

■ The constitution of the International requires not only specification of the sections violated, but a statement with reasonable certainty of the facts of the offense charged, the time and place of the occurrence, and the names of witnesses. 29 U.S.C. § 411(a)(5) requires "written specific charges." Clearly there are questions concerning the specificity of the charges, but it is at least arguable that the plaintiffs must, from the circumstances, have been sufficiently aware of them. We do not agree that the charges were so defective as to excuse resort to internal remedies.

With respect to a continuance, the evidence was that on May 22 Mr. Spangler tried to reach Mr. Mamet. Spangler understood that Mamet was the attorney for Local No. 406, and, indeed he was later identified as such by Panepinto, and has appeared for Local No. 406 at trial and on appeal. Spangler called Mr. Mamet's office and talked with an associate, Mr. Baxter, seeking a one-week continuance. Baxter called Panepinto, who said he would try to get in touch with his board members. Panepinto testified he was unable to do so. These calls occurred late in the afternoon of May 22, the hearing being set for 7:30 that evening. There is a conflict in the testimony concerning the conversations between Baxter and Spangler.

Spangler testified that Baxter returned his call and said he had talked to Panepinto and it was all right to continue it from the 22nd to the 29th. Baxter testified to only one call in which he told Spangler the office was not involved in the matter. He agreed to call the Local to see if the matter could be continued and "if anything could be done, I would get back to him."

■ There is no evidence that the trial board or Panepinto agreed to a continuance or authorized Baxter to grant one. There is testimony that the law firm was not involved in the proceeding at that stage. There seems to have been a misunderstanding between Baxter and Spangler, but the finding that Local No. 406 agreed to a continuance is clearly erroneous. Such a misunderstanding does not excuse plaintiffs from the requirement of exhausting internal remedies.

■ A challenge to a local union's disciplinary procedures should properly be made in the first instance within the union since there is possibility that corrective action

may render the particular issues moot, thus conserving judicial resources. *Buzzard v. Local Lodge 1040*, 480 F.2d 35 (9th Cir. 1973), *McKeon v. Local 107, Int'l Broth. of Teamsters, etc.*, 223 F.Supp. 341 (Del.1963).

IV

Defendant also relies on the second proviso of 29 U.S.C. § 411(a)(4), as follows: ". . . *and provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, . . . ."

The district court found that Batteast Construction Company was not an "interested employer." We are of the opinion that the finding was clearly erroneous.

"Whether an employer is interested in the litigation, that is, whether an employer is concerned with it or is liable to be affected by it or has some self-interest in it, must necessarily be determined in the factual context which gave rise to the litigation." *Adamszewski v. Local Lodge 1487, Int. Assn of M & A Wkrs.*, 496 F.2d 777 (7th Cir. 1974).

"Congress meant to prohibit an employer from financing a suit by a union member when the employer had a concrete interest in the litigation due to its relationship with the union." *Id.* at 783. "Having a concrete interest in the litigation means having a share or concern in the litigation, liable to be affected by it." *Id.* at 784.

This litigation focussed upon the fines imposed by Local No. 406. It sought to establish that the fines were unlawfully imposed, to have plaintiffs restored to membership in the International Union and their home locals, and to recover damages resulting from their loss of membership.

Batteast did business in South Bend as well as Gary and employed cement finishers at its jobs. The South Bend local asked Batteast not to employ plaintiffs after they lost their membership, and he did not do so at South Bend.

The fines arose out of Batteast's transfer of plaintiffs from a South Bend job to the Gary job. The Company had a dispute with the cement finishers at Gary (members of Local No. 406), and they struck. The Company arranged to have plaintiffs come to Gary and perform the work of the strikers. There is undenied testimony that Batteast attempted to induce another South Bend worker to come to Gary by promising to pay any union fine to which he might be subjected. There is testimony suggesting that a similar promise may have been made to plaintiffs.

It seems clear that Batteast was "interested" in the issues with which the action deals.

Because the district court found that Batteast was not an interested employer, there was no finding whether Batteast financed or encouraged the litigation.

Robert Batteast testified that when plaintiffs told him there had been charges lodged against them by Local No. 406, he called a professor of law whom he knew. Mr. Spangler testified that he received a call from the professor on May 21 and then asked Mr. Zaremba to find out what the difficulty was. There apparently were telephone calls between Spangler and Batteast, for one of plaintiffs testified that it was Robert Batteast who told them to go to the Spangler office.

There was no evidence that Batteast paid for the services of the Spangler firm either for representation in proceedings before the Local and International or for conducting this civil action. Robert Batteast, Spangler, and one of plaintiffs testified that Batteast did not pay or agree to pay.

Two of plaintiffs testified that they had agreed to give Spangler one-third of any recovery. The contingent fee arrangement probably was worked out once an action for damages had been decided upon. This action was not commenced until April, 1974, and plaintiffs continued to work on the Gary job until November, 1973. No witness suggested how Spangler would have been compensated if he had been successful at a hearing before the Local or on an appeal to the International, before plaintiffs had suffered any damage.

■ There was, however, evidence warranting a finding that Batteast encouraged the lawsuit.

James Benjamin was business agent for Local No. 101, South Bend, where Plaintiffs Harris and Plaintiff Britt were members. Batteast evidently employed members of Local No. 101 with some frequency. After plaintiffs were fined, Benjamin met with Robert and William Batteast in Robert's office. The Harrises and Britt were present. According to Benjamin's testimony (not denied), Robert Batteast said to the Harrises and Britt, "You can't have it both ways. Either you are going to pursue the law case or have your fines paid." William Batteast, the superintendent for the company, said, "I'll pay that fine out of my own pocket if I have to, but our lawyer told us we didn't have to."

Benjamin testified that early in 1974 he asked the Harrises and Britt to pay a new initiation fee. The next morning he was called to come to Robert Batteast's office where the Harrises and Britt were present. Benjamin described the discussion as very heated. Reference was made to "our lawyer." Batteast said he would "get this lawyer off his ass," and called the Spangler office, but Spangler was not in.

On October 30, 1973, Spangler `wrote a letter to Robert Batteast, as follows:

"Please be advised that we are pursuing the matter in regards to your four employees who were suspended by the union. We are still hopeful that this matter may be resolved by working within the procedural guidelines of the union's constitution and by-laws. Should it become evident that an amicable solution to this matter cannot be reached by such course of conduct, we will have no other alternative but to file the appropriate pleadings in a court action. However, in the meantime I recommend that you inform the individuals involved that they should continue to tender their union dues on a prompt and timely basis. In addition to tendering their dues, I would suggest that you instruct the men to continue applying for work through the un-

ion, for if the union discriminates against them on any basis other than their failure to tender periodic dues, it will then be an unfair labor practice, and the men will then be able to seek relief through the NLRB in addition to the other processes available to them.

"We will keep you advised of any and all further developments in this matter, and will strive to obtain a timely conclusion of same."

Copies of this letter were sent to plaintiffs.

Benjamin testified that shortly after October 30, Robert Batteast showed Benjamin the letter and "said, 'It's in the hands of the lawyer and you better watch what you're doing or you better start taking . . ., or accept their dues when it is tendered to you,' or something to that effect."

Both because plaintiffs failed to exhaust an apparently adequate internal remedy before bringing action, and because the litigation was encouraged by an interested employer, we reverse the judgment appealed from and remand with directions to dismiss the action.