Karen M. PHELAN, as Administrator of the Estate of Shane P. Phelan, Charlene Phelan, as Co–Administrator of the Estate of Shane P. Phelan, Donald V. Fitzgerald, Mark Cotton, Plaintiffs–Appellees, Cross–Appellants,

v.

LOCAL 305 OF the UNITED ASSOCIATION OF JOURNEYMEN, AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF the UNITED STATES AND CANADA, Patrick Quinn, Terrence Quinn, Defendants–Appellants, Cross–Appellees,

United Association of the Plumbing and Pipefitting Industry of the United States and Canada, Defendant–Cross–Appellee,

Mechanical Contractors Association of Connecticut, Inc., Eastern Connecticut Mechanical Contractors Association, Inc. and Stone & Webster Engineering, Defendants.

Nos. 1287–1289 and 1386, Dockets 91–9145, 91–9147, 91–9149 and 91–9151.

United States Court of Appeals, Second Circuit.

Argued May 1, 1992.

Decided Aug. 25, 1992.

Joel M. Ellis, West Hartford, Conn. (William S. Zeman, of counsel), for defendant-appellant/cross-appellee Patrick Quinn.

Robert M. Cheverie, Hartford, Conn. (Bianca D. Mackey, Robert M. Cheverie & Associates, of counsel), for defendant-appellant/cross-appellee Local 305.

Richard S. Brook, Mineola, N.Y., for defendant-appellant/cross-appellee Terrence Quinn.

Sally M. Tedrow, Washington, D.C. (Francis J. Martorana, O'Donoghue & O'Donoghue, of counsel), for defendant-cross-appellee United Ass'n.

Leon M. Rosenblatt, West Hartford, Conn. (M. Katherine Wood, Rosenblatt & Mills, of counsel), for plaintiffs-appel-

lees/cross-appellants Karen M. Phelan, et al.

Terry R. Yellig, Stephen E. Coye, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, D.C., on the brief, for amicus curiae, Building and Const. Trades Dept., AFL-CIO.

Susan M. Jennik, Brooklyn, N.Y., on the brief, for amicus curiae, Ass'n. for Union Democracy.

Before: MESKILL, Chief Judge, NEWMAN, Circuit Judge, and ARCARA,* District Judge.

MESKILL, Chief Judge:

On this appeal and cross-appeal from a judgment entered on jury verdicts in the United States District Court for the District of Connecticut, Clarie, J., we must decide whether Title I of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411 *et seq.*, also known as the LMRDA Bill of Rights, grants us jurisdiction to hear suits brought by plaintiffs who were members of Local No. 76 (Local 76) of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (United Association), against a sister local and one of its officers. We also address, *inter alia,* the appropriate limitations period for counts alleging a breach of the duty of fair representation, violations of the LMRDA Bill of Rights and breaches of union constitutions.

Affirmed in part, reversed in part and remanded to the district court for further proceedings not inconsistent with this opinion.

### BACKGROUND

Plaintiffs Phelan, Fitzgerald and Cotton were members of defendant Local 76, one of United Association's chartered locals. When work was unavailable within Local 76's geographic jurisdiction, plaintiffs would travel to the jurisdiction of defendant Local No. 305 (Local 305), another of United Association's chartered locals. Local 305 operated a hiring hall that referred workers to employers under the terms of collective bargaining agreements between Local 305 and employers in its area. Plaintiffs sought work through that hiring hall.

Defendant Mechanical Contractors' Association of Connecticut (MCAC) is the collective bargaining representative of construction contractors doing business in Connecticut. It has entered into collective bargaining agreements with the United Association and its local chapters in the State of Connecticut. Defendant Eastern Connecticut Mechanical Contractors' Association (ECMCA) is the MCAC's agent for collective bargaining in Local 305's geographic jurisdiction.

Defendant Stone & Webster Engineering Corp. (Stone & Webster), a member of both ECMCA and MCAC, was for a number of years the largest employer of Local 305 members. It employed them to work at the Millstone Point Nuclear Power Facility (Millstone) in Waterford, Connecticut. Because of the size of the Millstone project, Stone & Webster's need for plumbers at times exceeded Local 305's membership. When that occurred, members of other United Association locals who had registered with Local 305's hiring hall by signing the out-of-work book were referred to Millstone for work.

Defendant Patrick Quinn was Business Manager of Local 76 from June 1982 through June 20, 1985. During all times relevant to this action Terrence Quinn, Patrick Quinn's brother, was Business Manager of defendant Local 305.

In April 1982, Phelan nominated Fitzgerald to oppose Patrick Quinn in the June 1982 election for the position of Local 76's Business Manager. Despite Phelan's active campaigning on Fitzgerald's behalf, Quinn won reelection.

In October 1982, Fitzgerald went to Local 76's hiring hall and requested that he be referred to work at Millstone. Patrick

---

* Honorable Richard J. Arcara, United States District Judge for the Western District of New York, sitting by designation.

Quinn responded to the request, telling Fitzgerald in effect that he had no problem with that as long as Fitzgerald "got out of his face on the union floor"—that is, remained quiet at meetings. Fitzgerald agreed and, within a week, Fitzgerald received a referral to Millstone. Apparently, however, Fitzgerald's acquiescence did not last long.

Testimony at trial showed that Patrick Quinn resented Fitzgerald's continued opposition during 1983 and later and that he had stated that he would get even with Fitzgerald for causing him difficulty within the union. To this end, Patrick Quinn walked around union meetings jotting down notes to himself when members would agree with what Fitzgerald said. According to one witness, Patrick Quinn had stated that he could hurt union members who made derogatory remarks about him by affecting their ability to work at Millstone.

Patrick Quinn's opportunity for revenge was his ability to affect hiring hall referrals and to control the work that Local 76's members obtained. Members of Local 76 obtained work at Millstone by procuring a travel card from Patrick Quinn and registering with Local 305 through Terrence Quinn. Testimony indicated that Patrick Quinn had boasted that he and his brother Terrence controlled Millstone.

On January 18, 1985 Fitzgerald was laid off from a job that he held at Stone & Webster. Many others were laid off at this time as well.

On February 27, 1985, Phelan, Cotton and Fitzgerald attempted to register for work at Millstone by signing the out-of-work book at Local 305's hiring hall. Officials at the hall refused to allow them to sign the out-of-work book, and the three thus were unable to get the work that they had sought. Telephone records revealed that someone made a telephone call from Local 305 to Local 76 on that day during the time when plaintiffs were at Local 305.

From the Local 305 hiring hall, plaintiffs proceeded to the National Labor Relation Board's (NLRB) Hartford office where they filed unfair labor practice charges

against Local 305. Plaintiffs prevailed before the Administrative Law Judge (ALJ). The NLRB affirmed the ALJ's decision, and in an unpublished order we enforced the NLRB's order.

In March 1985, Phelan, on behalf of himself, Cotton and Fitzgerald, wrote to the international union, United Association, about their problems. By letter dated April 2, 1985, United Association's president informed plaintiffs that their travel cards would be accepted by Local 305 if presented. Despite this assurance, plaintiffs did not attempt to register with Local 305 until June 25, 1985. In the interim, events that are significant to this appeal occurred.

Phelan and others ran against Patrick Quinn in the June 1985 election for Local 76's Business Manager. Patrick Quinn was defeated and ceased serving in that position on June 20, 1985.

On June 3, 1985, Phelan, Cotton and Michael Napolitano, who is not a party to this action, entered into an agreement with Local 76 to settle NLRB charges. In that agreement, Phelan and Cotton released Local 76's officers and agents—including Patrick Quinn—from all liability for actions that were or may have been within the scope of those charges and that occurred prior to the date of the agreement.

On June 10, 1985 at least one person was referred to work through the hiring hall. Thereafter, on June 25, 1985, plaintiffs registered with Local 305 for work at Millstone by signing an out-of-work book. They claim that they were given a different out-of-work book to sign than the one from which referrals regularly took place.

On December 3, 1985, Phelan, Fitzgerald and Cotton brought the present action. Their complaint, as subsequently amended, set forth a number of allegations. Counts One through Four were brought against Patrick Quinn, Terrence Quinn, United Association and Local 305. Count One alleged a breached of the duty of fair representation. Count Two alleged wrongful discipline in violation of 29 U.S.C. § 529. Count Three claimed that defendants con-

spired to deny plaintiffs rights guaranteed them under the LMRDA Bill of Rights, *id.* § 411 *et seq.* Count Four alleged that defendants violated section 301 of the Labor Management Relations Act (LMRA), *id.* § 185, by breaching the United Association's constitution and the locals' bylaws. Count Five alleged that all seven defendants, in violation of section 301 of the LMRA, breached both (1) the Collective Bargaining Agreement between Local 305 and the MCAC and ECMCA, and (2) the Rules and Regulations of the Joint Hiring Committee. Counts Six through Eleven set forth a number of pendent state claims. Subsequently, the claims against MCAC and ECMCA were withdrawn.

In the district court's May 17, 1990 ruling, it granted summary judgment to United Association and Stone & Webster on all counts. It granted summary judgment to Terrence Quinn and Patrick Quinn on all but the Count Three LMRDA claims. Counts One, Four and Five were dismissed as against United Association and Local 305 on statute of limitations grounds, and as against Patrick and Terrence Quinn on grounds not at issue in this appeal. Counts Two and Six through Eleven were dismissed against all defendants on other grounds not at issue in this appeal.

Remaining for trial were (1) Fitzgerald's Count Three LMRDA Bill of Rights claim against Patrick Quinn, and (2) Phelan's, Fitzgerald's and Cotton's Count Three LMRDA Bill of Rights claims against Local 305 and Terrence Quinn. With the consent of the parties, Judge Clarie referred the matter to Magistrate Judge Eagan for all further proceedings and entry of judgment. The claims were tried before a jury in a bifurcated proceeding. On November 16, 1990, the jury returned a liability verdict in plaintiffs' favor. After a seven day damages trial, the jury awarded (1) back pay and punitive damages in favor of Fitzgerald against Patrick Quinn, and (2) back pay and punitive damages in favor of all three plaintiffs against Local 305 and Terrence Quinn. After subsequent rulings and entry of final judgment, this appeal followed.

## DISCUSSION

### A. *Subject Matter Jurisdiction Over LMRDA Claims*

■ Defendants Local 305 and Terrence Quinn contend on appeal, as they did below, that the district court lacked subject matter jurisdiction over the LMRDA claims brought against them. They assert that Title I of the LMRDA, 29 U.S.C. § 411 *et seq.* (Title I), grants federal courts only the limited authority to hear suits by plaintiffs against a union of which plaintiffs are members or that union's officers. The district court rejected this argument and held that it had subject matter jurisdiction over the claims because Title I is equally applicable when a sister union, or its agents, infringes on protected rights. We disagree with the district court. The LMRDA claims should be dismissed for lack of subject matter jurisdiction.

Title I guarantees "to [union] *members* equal rights and freedom of speech in the conduct of union affairs." *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1250 (2d Cir.1970) (emphasis added), *cert. denied,* 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971); *see* 29 U.S.C. § 411(a)(1) ("Every *member* of a labor organization shall have equal rights and privileges within such organization ... to vote.") (emphasis added); *id.* § 411(a)(2) ("Every *member* ... shall have the right to meet and assemble freely ... and to express any views.") (emphasis added). To shelter these liberties, section 102 provides that "[a]ny person whose rights *secured by the provisions of this subchapter* have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States." *Id.* § 412 (emphasis added). Therefore, a plaintiff may proceed with a section 102 suit only if rights secured by Title I have been infringed.

Congress did not intend Title I of the LMRDA to create a panoply of rights to which all persons injured in some way relating to a union may turn when seeking redress. *See Abrams*, 434 F.2d at 1250 ("Title I ... is not a catch-all into which might be swept all manner of miscellaneous charges.") (citations omitted); *cf. Fin-*

*negan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982) (section 101 does not protect job security or tenure of union officers or employees as such). Rather, as this Circuit has "consistently held," *Thompson v. New York Central Railroad Co.,* 361 F.2d 137, 145 (2d Cir.1966), Title I "regulates only the relationship between the union and its members," *id.,* not other relationships, *see id.; Abrams,* 434 F.2d at 1250 (citing *Thompson* ).

Because Title I only governs the relationship among unions and their members, and section 102 only allows a litigant to seek redress for an infringement of rights secured under Title I, *see Finnegan,* 456 U.S. at 439, 102 S.Ct. at 1872, we have held that we have subject matter jurisdiction to hear only those suits brought by plaintiffs against unions rather than employers, *see Thompson,* 361 F.2d at 145; *Abrams,* 434 F.2d at 1250, or against union officials, *see Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1246 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Morrissey v. National Maritime Union of America,* 544 F.2d 19, 24 (2d Cir.1976), or against an international union that ratifies the unlawful acts of one of its affiliated locals, *see Rodonich v. House Wreckers Union Local 95,* 817 F.2d 967, 972–73 (2d Cir.1987). Accordingly, an employee has no claim against his or her employer under section 102, despite an allegation of collusion between the employer and the union. *Thompson,* 361 F.2d at 145. Similarly, courts have refused to entertain suits by plaintiffs against unions that have rejected them for membership, *see Vincent v. Plumbers & Steamfitters Local No. 198,* 384 F.Supp. 1379 (M.D.La. 1974), or refused them transfers, *see Gavin v. Structural Iron Workers Local No. 1,* 553 F.2d 28 (7th Cir.1977). Although "agents" of a union in which plaintiffs are members may be subject to suit under the LMRDA, *Thompson,* 361 F.2d at 145, plaintiffs expressly disclaim an agency theory in this case.

At least one court has entertained a suit brought against a sister local. *See Harris v. Plasterers & Cement Masons Local No. 406,* 619 F.2d 1164 (7th Cir.1980). In *Harris,* an employer in Local No. 406's (Local 406) geographic jurisdiction needed workers for a job and hired the plaintiffs, who were members of the international union and other locals but were not members of Local 406. Subsequently, Local 406 fined them $500 each because plaintiffs had crossed a picket line. Plaintiffs did not appeal or pay the fine and, in accordance with the international union's constitutional provision on nonpayment of fines, were expelled from the international and the locals of which they had been members.

The plaintiffs sued Local 406, basing their claims on the LMRDA. The defendants argued to the Seventh Circuit that the action could not be brought against Local 406 because the plaintiffs were not "members" of that organization. The court rejected this argument noting that plaintiffs were "seeking redress from defendant local for injuries to their rights of membership in the affiliated international and other locals, caused by improper acts of defendant local in exercising power delegated to it by the constitution of the International." *Id.* at 1167.

We decline to follow *Harris.* We find it inconsistent with both the limited jurisdictional reach afforded us by the LMRDA and our cases refusing to entertain suits by plaintiffs against employers who allegedly had colluded with unions. The LMRDA "regulates only the relationship between the union and its members," *Thompson,* 361 F.2d at 145, and does not grant us power to hear a claim against other unions or their officers.

This rule generally will not hobble plaintiffs.[1] Other statutes reflect the congressional policy that unions and their officers should not be allowed to utilize the job referral process to thwart membership rights in other unions. For example, sec-

---

**1.** In this case, for example, plaintiffs in fact prevailed in the NLRB proceeding against Local 305, and could have brought an LMRDA action against Local 76 had their settlement with Local 76 not precluded such an action.

tions 8(b)(1)(A) and 8(b)(2) of the LMRA, 29 U.S.C. § 158(b)(1)(A), (b)(2), prohibit discriminatory referrals by a local against nonmembers, *see International Brotherhood of Electrical Workers, Local 211 v. NLRB*, 821 F.2d 206, 210–11 (3d Cir.1987), or travelers, *see International Association of Bridge, Structural and Ornamental Iron Workers, Local 111 v. NLRB*, 792 F.2d 241, 244–45 (D.C.Cir.1986). Similarly, an individual who suffers discrimination in the operation of a hiring hall may maintain an action alleging breach of the duty of fair representation. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 88, 110 S.Ct. 424, 437, 107 L.Ed.2d 388 (1989) ("Together with [the authority to refer workers for employment through a hiring hall] comes the responsibility to exercise it in a nonarbitrary and nondiscriminatory fashion."). With that said, we turn to whether plaintiffs were members of Local 305 for purposes of pursuing their LMRDA claims.

■ The LMRDA defines a member in a labor organization as "any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended." 29 U.S.C. § 402(*o*). "The definition of 'member' within [section 402(*o*)] is not limited to those persons who are recognized as members by the organization." *Basilicato v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada*, 479 F.Supp. 1232, 1242 (D.Conn. 1979), *aff'd*, 628 F.2d 1344 (2d Cir.1980). Rather, we focus on whether plaintiffs have fulfilled the requirements of membership. *Id.* Thus, that "union officials have not performed the ministerial acts necessary to give formal recognition to a person's status as a member" is not determinative. *Id.* (citation omitted). We therefore look to whether an individual has satisfied or sought to satisfy the requirements of the union at issue to determine whether he is a "member" for LMRDA purposes.

■ Membership in Local 305 is governed in part by the United Association's constitution. Under the terms of that constitution, it is clear that plaintiffs were not full members of Local 305. Section 229 of the United Association's constitution establishes the privileges and procedures that apply to members of the international who seek to work outside the jurisdiction of their local union. These individuals, referred to as "travelers," retain their membership in their "home" local, to which they continue to pay dues. *See* United Association Constitution § 229(f) ("When a member deposits his travel card in a sister Local Union, he shall continue to pay all his regular dues and assessments to the Local Union in which he holds membership, and shall retain all rights and privileges of membership in his home Local Union."). Although the traveler may attend meetings at the sister local, he is entitled to vote only at his "home" local. *Id.* § 229(h) ("Such member shall not be entitled to voice or vote in the Local Union in which his travel card is deposited, but shall enjoy the privilege of attending the meetings of the Local Union."). Plaintiffs here were members of Local 76 who only traveled to Local 305's geographic jurisdiction to obtain work.

Different procedures govern the process by which a member of one local union may "transfer" to a different local. *Id.* § 230. If a member of a local utilizes this process, that member loses membership rights in the first local and becomes a member of the second. *See id.* § 230(k), (*l*). Plaintiffs in this case did not utilize this "transfer" procedure, and in no way sought more than "travelers'" rights in Local 305. Plaintiffs stress that they were qualified for membership in Local 305 and were the functional equivalent of members in Local 305. This is immaterial where, as here, plaintiffs did not seek to become full members. We conclude therefore that plaintiffs were not members of Local 305 as defined by the United Association's constitution and the LMRDA. The district court erred in holding that it had jurisdiction under the claims brought against Local 305 and Terrence Quinn under the LMRDA, and on remand it should dismiss those claims.

## B. *Borrowing Statutes of Limitations*

Counts One and Four were dismissed as against United Association and Local 305 on statute of limitations grounds. Plaintiffs argue that we should reinstate Counts One and Four, which were not LMRDA claims, because an improper limitations period was applied by the district court. Count One alleged a breach of the duty of fair representation by discriminating against plaintiffs in job referrals in retaliation for their internal union activity. Count Four alleged a violation of section 301 by breach of obligations contained in the United Association constitution and the locals' bylaws. Neither count named employer defendants. After a number of rulings by different magistrate judges and the Supreme Court's issuance of a significant decision on the issue, *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989) (borrowing state limitations period in LMRDA suit), the district court, based on the Supreme Court's opinion in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), borrowed the federal six month limitations period in LMRA section 10(b), 29 U.S.C. § 160(b) (section 10(b)), and dismissed these counts as against United Association and Local 305 as time barred. Its rationale was that the claims would directly affect the labor management relationship, and that federal labor policy militated against allowing such claims to fester unnecessarily. Plaintiffs claim that *Reed* should have governed and argue that the district court should have applied state limitations periods. We agree as to Count Four's section 301 claim but not as to Count One's duty of fair representation claim. Patrick Quinn argues that section 10(b)'s six month limitations period should have governed Count Three's LMRDA claims. We disagree.

 Where, as here, the federal statute under which a plaintiff brings an action does not provide a specific limitations period, federal courts must determine the appropriate limitations period according to federal law. *See Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966) (federal law governs timeliness issue in section 301 suits). This normally entails borrowing the most closely analogous state statute of limitations. *See, e.g., DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287. However, as has become increasingly apparent in the last several years, *see Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (borrowing federal securities limitation to create uniformity); *Agency Holding Corp. v. Malley–Duff & Associates,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (borrowing antitrust limitation in RICO case); *DelCostello,* 462 U.S. at 151, 103 S.Ct. at 2283 (borrowing federal limitation in labor case), state limitations periods do not necessarily complement federal statutes and borrowing them sometimes proves unwise. *Cf. Communications Workers of America v. Western Electric Co.,* 860 F.2d 1137, 1139 (1st Cir.1988) ("[T]he glance in the direction of the state-law cupboard should not be an automatic or reflexive one."). Accordingly, we borrow federal rather than state limitations periods where (1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation "a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294. These circumstances are "closely circumscribed." *Reed,* 488 U.S. at 324, 109 S.Ct. at 625.

 The problems in choosing the proper statute to borrow are compounded in the labor area, where even section 301 encompasses many varieties of actions. *Compare Auto Workers,* 383 U.S. at 705–08, 86 S.Ct. at 1113–15 (contract type action), *with DelCostello,* 462 U.S. at 163–72, 103 S.Ct. at 2290–94 (hybrid section 301/fair representation suit). Because the Supreme Court has rejected the argument that uniformity among borrowing limitations is needed among all labor cases, *see Auto Workers,* 383 U.S. at 702–03, 86 S.Ct. at 1111–12 ("Lack of uniformity [among statutes of limitations in section 301 suits] is

... unlikely to frustrate in any important way the achievement of any significant goal of labor policy.... That Congress did not provide a uniform limitations provision for § 301 suits is not an argument for judicially creating one."), we analyze each labor case on its facts before choosing which limitations period to borrow.

A number of Supreme Court decisions provide guidance, and we address them in turn. In *Auto Workers*, 383 U.S. at 696, 86 S.Ct. at 1107, the Court considered an action brought by a union against an employer to recover vacation pay that allegedly was due to discharged employees under the terms of a collective bargaining agreement. Because an action for vacation pay is basically an action for damages based on an employer's alleged breach of a collective bargaining agreement, which closely resembles a state law action for contractual breach, *id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7, the Court applied the state's statute of limitations for contracts not in writing, *id.* at 707, 86 S.Ct. at 1114. The Court made clear, however, that its decision did not necessarily mandate a similar result in other section 301 actions, *id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7 ("Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question.") (citations omitted), and left open the door for the borrowing of federal limitations periods in labor cases.

 In *DelCostello*, 462 U.S. at 151, 103 S.Ct. at 2283, the Supreme Court addressed what statute of limitations applies in a hybrid section 301/fair representation suit. In a hybrid section 301/fair representation suit, the union member sues both an employer and a union alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the ensuing grievance or arbitration proceedings. As a formal matter, the suit comprises two causes of action. *See, e.g., id.* at 164, 103 S.Ct. at 2290. Section 301 provides the basis for the claim against the employer, and the duty of fair representation claim is implied under the National Labor Relations Act (NLRA). *Id.* at 164 & n. 14, 103 S.Ct. at 2290 & n. 14.

The Court concluded that hybrid claims have "no close analogy in ordinary state law." *Id.* at 165, 103 S.Ct. at 2291. It stressed that although brought separately against the union and the employer, " 'the two claims are inextricably interdependent....' The employee may ... sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *Id.* at 164–65, 103 S.Ct. at 2291.

Having determined that the hybrid suit at issue had no counterpart in state law, the Court turned its attention to whether the state limitations periods suggested by the parties were appropriate. It declined to borrow the state limitations period either for vacating arbitration awards or for legal malpractice. The ninety day period for challenging an arbitration award would have failed to provide an aggrieved employee an adequate chance to vindicate his rights under section 301 and the fair representation doctrine. On the other hand, borrowing the longer state limitations period for legal malpractice would have frustrated the federal policy in favor of resolving labor disputes expeditiously.

As a result, the *DelCostello* Court held that the six month limitations period found in LMRA section 10(b), 29 U.S.C. § 160(b), should apply. The Court applied the section 10(b) period because in enacting it Congress had balanced the " 'national interests in stable bargaining relationships and finality of private settlements.' " *Id.* at 171, 103 S.Ct. at 2294 (citation omitted). In the Court's view, the state limitations periods were "unsatisfactory vehicles for the enforcement of federal law." *Id.* at 161, 103 S.Ct. at 2289.

The Supreme Court again addressed the borrowing issue in *Reed*. In *Reed*, a union local refused to reimburse its secretary-treasurer for time lost while carrying out union duties. *Reed*, 488 U.S. at 321–22, 109 S.Ct. at 624. The secretary-treasurer, who had been a vocal critic of the local's

president, brought an action against his union and its officers alleging interference with his LMRDA protected right to free speech on union matters. *Id.* The Court reasserted the general rule that when Congress fails to provide a limitations period for a federal cause of action, courts typically should borrow the most analogous state limitations period and emphasized that in labor law as elsewhere the exception to this rule is narrow. *Id.* at 323–24, 109 S.Ct. at 625. Accordingly, the Court held that the longer limitations period of state personal injury statutes applied to LMRDA section 101(a)(2), 29 U.S.C. § 411(a)(2), claims. *Id.* at 334, 109 S.Ct. at 630.

The Court rejected the argument that the section 10(b) six month limitations period should apply to LMRDA claims because dissension within a union affects the union's activities and effectiveness in the collective bargaining arena. *Id.* at 330–31, 109 S.Ct. at 629. Although the Court acknowledged that intra-union disputes might have a ripple effect on the collective bargaining relationship, *id.,* it concluded that such effects were purely tangential, and that the federal interests in collective bargaining and in the resolution of disputes under collective bargaining agreements were insufficiently implicated to invoke the section 10(b) limitations period, *id.* at 331, 109 S.Ct. at 629.

Internal union disputes, if allowed to fester, may erode the confidence of union members in their leaders and possibly cause disaffection with the union, thus weakening the union and its ability to bargain for its members. The Supreme Court concluded, however, that these concerns "establish no more than that § 101(a)(2) actions may sometimes have 'some impact on economic relations between union and employer and on labor peace.'" *Id.* at 331, 109 S.Ct. at 629 (citation omitted). As the Court stated:

> This is substantially less immediate and less significant an impact on bargaining and private dispute settlement than that which led us to apply the § 10(b) statute to hybrid § 301/fair representation claims, which directly challenge both the employer's adherence to the collective-

bargaining agreement and the union's representation of the employee in grievance-and-arbitration procedures.

*Id.*

This Court has had occasion in a number of labor cases to decide whether borrowing the section 10(b) limitation is appropriate. Our cases stress that *DelCostello* "should be narrowly construed." *Rodonich,* 817 F.2d at 976. Thus, in *Rodonich,* we held that courts should borrow state limitations periods where LMRDA claims "are asserted only against the union and concern disruption of internal union democracy." *Id.* at 977. However, our opinions also are clear in instructing district courts not to limit *DelCostello* to its facts. *See, e.g., Eatz v. DME Unit of Local Union Number 3,* 794 F.2d 29, 33 (2d Cir.1986). We therefore have borrowed the section 10(b) limitations period where claims have directly implicated the collective bargaining relationship, even in the non-hybrid context. For example, we have specifically applied *DelCostello* to duty of fair representation claims. *See Gvozdenovic v. United Air Lines,* 933 F.2d 1100, 1106 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 305, —— L.Ed.2d —— (1991); *Haerum v. Air Line Pilots Ass'n,* 892 F.2d 216, 219 (2d Cir. 1989); *Eatz,* 794 F.2d at 33.

We conclude that state limitations periods govern Counts Three and Four and that Count One should be governed by the six month section 10(b) limitations period.

■ Count One alleges that United Association breached its duty of fair representation. Under *DelCostello,* such claims are subject to the section 10(b) six month limitations period. *See DelCostello,* 462 U.S. at 151, 103 S.Ct. at 2283; *see also Gvozdenovic,* 933 F.2d at 1106 (applying six month limitations period to duty of fair representation claim); *Haerum,* 892 F.2d at 219 (same); *Eatz,* 794 F.2d at 33 (same). Because the duty of fair representation involves the union's conduct of its duties vis-a-vis the employer, the concerns expressed in *DelCostello* are directly implicated. The district court therefore appropriately applied the section 10(b) limitations period.

For reasons set forth below in our discussion of plaintiffs Phelan's and ·Cotton's claims against Patrick Quinn, *see infra* at D.2, we conclude that no actionable event occurred within six months prior to the December 3, 1985 filing of the complaint in this action. The district court thus properly dismissed this count.

■ *Reed* makes clear that the district court properly applied the three year limitations period applicable to personal injury claims to Count Three, the alleged conspiracy to deprive plaintiffs of their LMRDA rights. *See Reed*, 488 U.S. at 334, 109 S.Ct. at 630. The LMRDA interest in allowing plaintiffs to evaluate their claims is directly implicated. *See id.* at 326–27, 109 S.Ct. at 627. As in *Reed*, the collective bargaining process is implicated only indirectly by a claim such as this, and the policies that underlie section 10(b) are not sufficiently invoked to require that we depart from the normal course of borrowing state limitations periods. We reject defendants' argument that plaintiffs' LMRDA claim is merely a repackaged hybrid claim that properly is governed by section 10(b)'s six month limitations period. Thus, the district court properly applied the three year personal injury limitations period to Count Three.

■ We similarly conclude that Count Four, based on the alleged breach of United Association's constitution, should be governed by an appropriate state limitations period. We are not convinced that this count has no counterpart in state law. As in *Auto Workers*, 383 U.S. at 705–08, 86 S.Ct. at 1113–15, the claim readily may be analogized to a claim for breach of contract. *See Tobin v. Barry*, 678 F.Supp. 1018, 1022 (S.D.N.Y.1987) (citing *O'Hare v. General Marine Transport Co.*, 740 F.2d 160, 167 (2d Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985)). Nor would the normal course of borrowing a state limitations period frustrate federal law. This case does not involve the formation or ratification of a collective bargaining agreement as was the case in *Legutko v. Local 816, Int'l Brotherhood of Teamsters*, 853 F.2d 1046, 1050–

52 (2d Cir.1988). Resolution of claims concerning breach of a union constitution that do not relate to formation of a collective bargaining agreement should not have a direct and immediate impact on union-management relations. *See Reed*, 488 U.S. at 331, 109 S.Ct. at 629. The district court therefore erred by adopting the section 10(b) limitations period. The district court on remand should analyze the most closely analogous Connecticut state law action and apply its limitations period to Count Four.

## C. Claims Against United Association

The district court dismissed on summary judgment plaintiffs' claims as against United Association. Plaintiffs argue that they had valid claims on Counts Three and Four, their only claims which we do not conclude to be time-barred. We reject plaintiffs' argument.

Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). " '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Republic Nat'l Bank of New York v. Eastern Airlines*, 815 F.2d 232, 238 (2d Cir.1987) (citation omitted). "[W]hen a nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof,' " the district court should grant summary judgment. *Burke v. Bevona*, 931 F.2d 998, 1001 (2d Cir.1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

■ An international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts. *See Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S.

212, 217–18, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979). Common law agency principles govern an international union's liability for actions of its local chapters or their officers. *See Rodonich*, 817 F.2d at 972–73. The international is liable if it ratified the illegal acts of the local. *Id.* at 973. Ratification occurs " 'when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it.' " *Id.* (citations omitted). These principles apply both to violations of contracts between labor organizations under section 301 of the LMRA, 29 U.S.C. § 185, and to union democracy claims under the LMRDA, 29 U.S.C. § 411 *et seq. Id.* at 972–73.

 Plaintiffs point out that they complained about the scheme to suppress dissent. However, when plaintiffs complained to the United Association General President, he assured them that he would see to it that their travel cards would be accepted. Plaintiffs also stress that a United Association representative attended meetings of the Connecticut local chapters' business managers at which plaintiffs' complaints were mentioned. This provided no evidence of ratification or participation. Plaintiffs also stress that United Association offered legal assistance in a previous NLRB proceeding. However, as an affidavit of United Association's Assistant General President explained, "[t]he UA ... authorizes its counsel to render legal services in matters in which the UA is not itself a party.... Such services can take the form of a 'friend of the court,' or *amicus*, brief or of other advice or support in matters or on issues in which our counsel have some special experience or expertise ... so long as the matter is one in which the UA shares a common concern." This affidavit explained that legal assistance was offered to challenge an agency theory with which United Association disagreed. The offer or limited provision of legal aid does not alone suffice to show a triable issue as to whether an international union either had full knowledge of and ratified the locals' actions or had itself participated in a system of discriminatory referrals. *Cf. Sine v. Local No. 992, International Brotherhood*

*of Teamsters*, 730 F.2d 964, 966 (4th Cir. 1984) (lawyer's limited assistance alone was insufficient to show an agency relationship on which liability could be based). There was no evidence that United Association participated in, ratified or encouraged the scheme to suppress dissent. We need not determine whether provision of legal services in other circumstances could serve as a basis for liability. Plaintiffs, in opposing United Association's summary judgment motion, directed the district court to no evidence from which the United Association could have been held liable either for injuring them by breaching or ratifying a breach of the United Association's constitution or by participating in or ratifying the scheme to suppress dissent. Summary judgment was proper.

### D. *Claims Against Patrick Quinn*

#### 1. Fitzgerald

Patrick Quinn and Fitzgerald each make arguments concerning treatment below of Fitzgerald's LMRDA Bill of Rights claim that proceeded to trial. The jury awarded Fitzgerald $4,534.22 in back pay and $50,-000 in punitive damages against Patrick Quinn. We discuss only those arguments that deserve attention or affect our decision.

##### a. *Jury Instructions*

Patrick Quinn asks us to reverse the judgment against him based on error in the jury instructions. We review a claim of error in a jury charge to determine "whether the entire charge, viewed in light of all of the evidence, would tend to confuse or mislead the jury as to the principles of law that apply to the facts." *National R.R. Passenger Corp. v. One 25,900 Square Foot Parcel of Land*, 766 F.2d 685, 688 (2d Cir.1985) (citation omitted). "[W]e will reverse the judgment of a trial court ... because of an error in the jury instructions only if, based on a review of the record as a whole, we are persuaded that the error was prejudicial." *Id.* (citation omitted); *see* Fed.R.Civ.P. 61.

Patrick Quinn directs us to the seventh interrogatory to the jury, which asked: "Has the plaintiff, Donald Fitzgerald, met his burden of proving by clear and convincing evidence that defendant Patrick Quinn engaged in a scheme to suppress dissent within the union?" He asserts in essence that this question improperly relieved Fitzgerald of the need to prove during the liability phase of the proceedings that Patrick Quinn injured Fitzgerald.

As noted above, section 102 of the LMRDA affords a remedy to any person whose rights secured by Title I have been infringed. *See* 29 U.S.C. § 412; *Johnson v. Kay*, 860 F.2d 529, 536 (2d Cir.1988). Among the rights alleged to have been infringed in this case are rights guaranteed by sections 101(a)(1) and (2), which secure to union members, *inter alia*, the right to nominate candidates and to express any views concerning union activities and candidates for union office. *See* 29 U.S.C. § 411(a)(1), (2). Union members may maintain an action under section 102 by proving a general scheme to suppress dissent within the union. *See Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973). Although a section 102 plaintiff may prove his or her case by demonstrating economic injury resulting from retaliation for his or her exercise of section 101 rights, such proof is not necessary in the liability phase of a bifurcated trial.

The jury instructions in this case fairly conveyed to the jury the nature of Fitzgerald's claim. The court instructed the jury that "Fitzgerald [and the other plaintiffs] assert that ... Patrick Quinn[ ] *infringed their rights* as union members by engaging in a scheme to suppress dissent" and that "plaintiffs claim that the refusal to allow them to register for work ... *violated their rights* under Title I." (emphasis added). The court did not err by waiting until the damages phase of the trial specifically to ask the jury whether Fitzgerald had proven by clear and convincing evidence that he had lost wages as a result of Patrick Quinn's involvement in the scheme to suppress dissent.

### b. *Failure to Reduce the Back Pay Award*

Patrick Quinn argues that Fitzgerald's back pay award against him should have been reduced by the amount of back pay awarded to Fitzgerald in the NLRB proceedings as a result of the February 27, 1985 hiring hall event. We agree.

A plaintiff may not recover twice for the same injury. *See, e.g., Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir.1989) (double recovery puts plaintiffs in better position than had they not been injured); *cf. Louis P. Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989) (adopting one satisfaction rule to govern settlements in 10b–5 securities cases), *cert. denied*, 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990). When a plaintiff receives a payment from one source for an injury, defendants are entitled to a credit of that amount against any judgment obtained by the plaintiff as long as both payments represent common damages. *Cf. Singer*, 878 F.2d at 600 (similar holding regarding settlements).

Fitzgerald argues that there was no double recovery because his proof of damages in the NLRB proceeding for which he received back pay damages from the February 27, 1985 event differed from the proof in the trial. He directs us to the January 18, 1985 layoff, from which he argues additional back pay could be awarded. However, he directs us to no evidence from which a jury reasonably could have concluded that the layoff resulted from the scheme to suppress dissent and Patrick Quinn's animosity toward him.

Fitzgerald presented clear and convincing evidence that Patrick Quinn injured him on February 27, 1985 through the scheme to suppress dissent, and that Fitzgerald suffered lost wages as a result. Fitzgerald has not directed us to clear and convincing evidence of damages stemming from any other event. Nor has he directed us to any evidence that he did not fully recover in the NLRB proceeding for back pay damages between February 27, 1985 and June 3, 1985, the date on which the jury concluded

damages ceased. Accordingly, the back pay award against Patrick Quinn should be set off in full to prevent a double recovery.

### c. *Punitive Damages and Remittitur Practice*

After a seven day damages trial, the jury awarded plaintiff Fitzgerald $50,000 in punitive damages against Patrick Quinn. The magistrate judge reduced the punitive damages award to $25,000, calling the $50,000 award "excessive." The magistrate judge did not offer Fitzgerald a new trial instead of a diminished award. Both Fitzgerald and Patrick Quinn argue that the procedure below was improper. We agree.

If a district court determines that a verdict is excessive, it may order a complete new trial or a new trial limited to damages. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2815, at 99 (1973 & Supp.1992). Under the practice of remittitur—"[T]he procedural process by which a verdict of the jury is diminished by subtraction." *Black's Law Dictionary* 1164 (5th ed. 1979)—the court also may condition a denial of a motion for a new trial on the filing by plaintiff of a remittitur in a stated amount. This provides plaintiff with the choice of either submitting to a new trial or of agreeing to an amount of damages that the court considers justified. However, the court should not decrease damages based on its belief that they are excessive without affording the option of a new trial. *See Kennon v. Gilmer*, 131 U.S. 22, 29, 9 S.Ct. 696, 699, 33 L.Ed. 110 (1889) ("[N]o court of law ... is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury."); *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1396 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991); *O'Gilvie v. International Playtex*, 821 F.2d 1438, 1447–48 (10th Cir.1987), *cert. denied,* 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988); *Kline v. Wolf*, 702 F.2d 400, 405 (2d Cir.1983); *Staplin v.*

*Maritime Overseas Corp.*, 519 F.2d 969, 972 (2d Cir.1975). Accordingly, we conclude that the magistrate judge erred in reducing the jury's award of punitive damages without giving plaintiffs the option of a new trial.

Patrick Quinn argues additionally that the jury was not entitled to conclude that he acted maliciously toward Fitzgerald. This argument is meritless and does not warrant discussion. The district court on remand should employ proper remittitur procedures.

### 2. Phelan and Cotton

Plaintiffs Phelan and Cotton released Local 76 and its agents for any event that occurred prior to June 3, 1985. They claim, however, that their LMRDA claims against Patrick Quinn should be reinstated because actionable events, in which they concede Patrick Quinn did not directly participate, occurred subsequent to that date. We disagree.

Plaintiffs claim that referrals were made on June 10, 1985 and that "there was a basis for a reasonable jury to conclude it would have been two of the plaintiffs who went to Millstone instead of the two who actually went" if defendants had not manipulated the hiring hall. The district court rejected the argument that this referral constituted an actionable event. The district court explained that plaintiffs had been notified in writing by the United Association's General President in April 1985 that they could register for work at Local 305 but had failed to do so. Because plaintiffs had not availed themselves of this opportunity at the time of the June 10 referrals, the district court concluded that referrals occurring between the date of the letter and their attempt to register on June 25 did not constitute actionable events. Its rationale was that if plaintiffs had in fact attempted to register they might have received the referrals. On the facts of this case, we agree with the district court. Accordingly, we need not decide whether a "continuing wrong" theory should govern the date on which limitations periods begin to run in LMRDA cases involving hiring

halls. *See Lewis v. Local Union No. 100 of Laborers' Int'l Union,* 750 F.2d 1368, 1378–79 (7th Cir.1984).

Plaintiffs also claimed at summary judgment that they were given the wrong out-of-work book—that is, a book out of which workers were not regularly referred to Millstone—to sign when they attempted to register with Local 305 on June 25, 1985. They argued that another book existed, out of which others first were referred. Because plaintiffs did not, at the time of the summary judgment motion, rebut defendants' assertion that no referrals took place after plaintiffs allegedly were given the wrong book, the district judge concluded that the event was not actionable. On appeal, plaintiffs make no meritorious argument as to why we should reverse this ruling.

█ We reject Patrick Quinn's argument that the magistrate judge abused his discretion in denying Rule 11 sanctions because plaintiffs supported their claims on the timeliness issue with hearsay evidence at summary judgment. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990) (applying abuse of discretion standard in reviewing Rule 11 sanctions).

CONCLUSION

We have considered the parties' other arguments, and they do not affect our decision. The judgment of the district court is affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

The parties shall bear their own costs.

