**Christine A. FULLER, Plaintiff–Appellant,**

v.

**J.P. MORGAN CHASE & CO., Benefits Appeal Committee, Defendant–Appellee.**

**Docket No. 03–7829.**

United States Court of Appeals, Second Circuit.

Argued: April 20, 2005.

Decided: Sept. 9, 2005.

---

Arnold H. Pedowitz, New York, NY, for Plaintiff–Appellant.

Stacey L. Blecher, J.P. Morgan Chase Legal Department, New York, NY (Talee Zur Potter, on the brief), for Defendant–Appellee.

Before: KEARSE, JACOBS, and STRAUB, Circuit Judges.

JACOBS, Circuit Judge.

Plaintiff Christine A. Fuller contends that the termination of her long-term disability benefits (i) violated the Americans with Disabilities Act (the "ADA") because the employer's plan affords a shorter period of coverage for impairments that are mental rather than physical, and (ii) was arbitrary and capricious in violation of the Employee Retirement Income Security Act ("ERISA"). She appeals from the judgment of the United States District Court for the Eastern District of New York (Block, *J.*), dismissing her complaint.

## I

Christine Fuller became disabled by bipolar disorder in 1996, while working for Chemical Bank (which is now, after several mergers, J.P. Morgan Chase). Fuller collected long-term disability benefits pursuant to J.P. Morgan's Long Term Disability Plan (the "Plan"). Under the Plan, employees with long-term *physical* disabilities receive benefits until age 65, while employees with long-term disabilities "aris[ing] from a *mental or emotional* disease or disorder," are limited to eighteen months of benefits. (emphasis added). The Plan (indirectly) confers on the Plan Administrator "the exclusive right and full discretion to interpret any and all of the provisions of the Plan and to determine any questions arising thereunder or in connection with the administration of the Plan." As the district court found, such questions include "deciding whether an employee's disability was a physical or mental disorder." *Fuller v. J.P. Morgan Chase & Co. Benefits Appeal Comm.*, Nos. 02–CV–5906–FB, LB, 2003 WL 21531005, at *1 (E.D.N.Y. Jul.1, 2003).

The Plan Administrator classified Fuller's condition as a long-term *mental* dis-

ability, and accordingly discontinued benefits after eighteen months. A representative of the Plan averred in an affidavit that the Plan Administrator relied on the listing of bipolar disorder in the Diagnostic and Statistical Manual of Mental Disorders IV ("DSM–IV"), published by the American Psychiatric Association, *see Fuller*, 2003 WL 21531005, at *1–*2, and that the Plan Administrator "consistently defer[red] to the DSM IV for determination on psychiatric and psychological disorders, as an authority on the subject matter." *Id.* (internal quotation marks omitted).

## II

■ Fuller's complaint, filed *pro se*, alleged a disparate-treatment ADA claim. The district court dismissed that claim, as a matter of law, on the (sound) basis that "Title I of the ADA does not bar entities covered by the statute from offering different long-term disability benefits for mental and physical disabilities." *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir.2000).

The ERISA claim was inferred from Fuller's affirmation, filed in opposition to J.P. Morgan's motion to dismiss, in which Fuller contended that "Bi–Polar Disorder .... is chemically caused, like diabetes for example, and should be treated like any other physical illness." The court *sua sponte* construed that allegation liberally as a claim under ERISA that the decision to terminate benefits was arbitrary and capricious. *Fuller v. J.P. Morgan Chase & Co. Benefits Appeal Comm.*, 02–CV–5906(FB)(LB), Memorandum and Order at 1–3 (E.D.N.Y. Apr. 28, 2003). The court

then converted J.P. Morgan's motion to dismiss to one for summary judgment on the ERISA claim and gave Fuller 30 days to respond. In response, Fuller submitted an affidavit from her treating physician, who opined in essence that "bi-polar disorder [is] a medically and physically caused illness" linked to chemical changes in the brain. In July 2003, the district court granted J.P. Morgan's motion for summary judgment and dismissed Fuller's complaint. *Fuller*, 2003 WL 21531005, at *1.

We review *de novo* the district court's grant of summary judgment. *See Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir.1998).

## III

■ Fuller relies on the Plan provision that limits benefits to eighteen months if the disability on which the benefits are based "arises from a mental or emotional disease or disorder," and on her doctor's opinion that bipolarity is a manifestation of "biochemical abnormalities in the brain." She argues therefore that bipolarity "arises from" a physical cause within the meaning of the Plan, and that the Plan Administrator abused its discretion under the Plan by allegedly ignoring the plain meaning of the "arises from" language. On that basis, she claims disability benefits until retirement.[1]

■ "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v.*

---

1. J.P. Morgan claims that Fuller raises this argument for the first time on appeal. Fuller's argument on appeal is better developed, but the record reflects that she at least raised the issue in the district court. Moreover,

given that Fuller appeared *pro se* before the district court, and that the court *sua sponte* construed one of her claims as an ERISA claim, we consider her argument.

*NYNEX Pension Plan,* 52 F.3d 438, 441 (2d Cir.1995). Under this highly deferential standard of review, this Court cannot substitute its judgment for that of the Plan Administrator and will not overturn a decision to deny or terminate benefits unless "it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 442 (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)); *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995) ("The court may not upset a reasonable interpretation by the administrator.").

The written terms of the Plan confer on the Plan Administrator "the exclusive right and full discretion to interpret any and all of the provisions of the Plan." Accordingly, the Plan Administrator was authorized to determine whether or not Fuller's disability "ar[ose] from a mental or emotional disease or disorder," and to extend or terminate benefits on that basis.

The Plan Administrator exercised its authority in a plainly reasonable manner by consulting the DSM–IV, an objective authority on the subject of mental disorders, and by relying on that reference work (as it had in the past).

It may well be that bipolarity is a manifestation of a chemical or electrical reaction in the brain and that it may be said to arise ultimately from a physical cause. But the issue under the Plan wording is whether Fuller's "[d]isability" "arises from" a mental disorder, a question quite distinct from whether the disorder itself arises from a physical cause. The Plan defines "[d]isability" as an impairment that renders the Plan participant unable to work:

> "Total and Permanent Disability" or "Totally and Permanently Disabled" means any medically determinable physical or mental impairment that can be expected to ... last for a continuous period of not less than 12 months which disability renders the Participant unable to physically perform the duties of the position for which employed by a Participating Company or the duties of any other substantial gainful activity ....

Fuller's argument conflates her disability with its underlying cause. Since Fuller's disability arises from a mental syndrome known as bipolar disorder, it is neither arbitrary nor capricious to limit Fuller's benefits, regardless of whether that disorder in turn has a physical cause.

The judgment of the district court is affirmed.