14-0877
Ocampo v. Building Service 32B-J Pension Fund

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2014

(Submitted: January 14, 2015          Decided: June 1, 2015)

Docket No. 14-0877

_____

FRANCY OCAMPO,

Plaintiff-Appellant,

- v. -

BUILDING SERVICE 32B-J PENSION FUND, and the BOARD OF
TRUSTEES for the BUILDING SERVICE 32B-J PENSION FUND,

Defendants-Appellees.[*]

_____

Before:  KATZMANN, Chief Judge, KEARSE and RAGGI, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York, Katherine B. Forrest, Judge, dismissing action brought under ERISA by pension plan participant seeking a pension on the basis of permanent disability.  Plaintiff alleged that the denial of her application was arbitrary and capricious because defendants determined that her disability was not permanent on the sole basis that the Social Security Administration ("SSA"), in awarding her Social

_____

[*]     The Clerk of Court is directed to amend the official caption to conform with the
        above.

Security disability benefits, had stated that her eligibility for such benefits must be reviewed at least once every three years, rather than once every five years. The district court granted summary judgment dismissing the complaint on the ground that the plan at issue conferred on defendants discretion to determine an applicant's eligibility for benefits and that defendants' reliance on SSA determinations, policies, and procedures in this matter was not arbitrary or capricious.

Affirmed.

FUSCO, BRANDENSTEIN & RADA, Woodbury, New York
(Aba Heiman, Woodbury, New York, of counsel), for
Plaintiff-Appellant,

RAAB, STURM & GANCHROW, New York, New
York(Michael Geffner, New York, New York, of
counsel), for Defendants-Appellees.

KEARSE, Circuit Judge:

Plaintiff Francy Ocampo, a participant in the Building Service 32BJ Pension Plan (the "Pension Plan" or "Plan"), appeals from a judgment of the United States District Court for the Southern District of New York, Katherine B. Forrest, Judge, dismissing her complaint against defendants Building Service 32B-J Pension Fund (the "Pension Fund") and Board of Trustees for the Building Service 32B-J Pension Fund (the "Trustees") brought under the Employment Retirement Income Security Act of 1974 ("ERISA"), see 29 U.S.C. § 1001 et seq., seeking a pension based on permanent disability. In support of her pension application, Ocampo had submitted proof that she was awarded Social Security disability benefits; the notice of award stated that her eligibility for such

2

benefits was to be reviewed by the Social Security Administration ("SSA") at least once every three years. The complaint alleged that defendants, based on the frequency of the SSA's planned review, found Ocampo's disability not to be permanent, but that defendants conceded they would consider her disability permanent if the SSA's reviews were scheduled to occur only every five years. The complaint alleged that categorization of a disability as permanent if SSA review is to occur every five years but as not permanent if such review is to occur every three years is arbitrary and capricious. The district court granted defendants' motion for summary judgment dismissing the complaint on the ground that the Pension Plan gave defendants discretion to determine an applicant's eligibility for pension benefits and that defendants' reliance on SSA determinations, policies, and procedures in this matter was neither arbitrary nor capricious. On appeal, Ocampo contends principally that the district court should have reviewed defendants' denial of her disability pension application de novo rather than under a deferential standard and that defendants' adoption of SSA views as to disability permanence was the antithesis of exercising discretion and was arbitrary and capricious. For the reasons that follow, we affirm.

## I. BACKGROUND

The following facts are not in dispute. For more than 20 years, Ocampo worked as an office cleaner and was a member of the Service Employees International Union, Local 32BJ. She was a participant in certain employee benefit plans (collectively the "Benefit Funds" or "Funds") including

3

the Pension Plan. She last worked in "Covered Employment" within the meaning of those plans in March 2005. On March 22, 2005, she began suffering from herniated discs in her back and has not worked since.

A. The SSA's Disability Benefits Award

In July 2005, Ocampo applied for disability insurance benefits under the Social Security Act, in which "disability," to the extent pertinent here, is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C § 423(d)(1)(A). In December 2006, an administrative law judge found that Ocampo had a disability as of March 22, 2005, due to herniated discs at L4-5 and L5-S1, with S1 nerve root compression and L5 radiculopathy and peripheral polyneuropathy; that her impairments were sufficiently severe that she could not sustain full time employment at any exertional level; and that she was unable to perform any past relevant work or any other work existing in significant numbers in the national economy. In March 2007, Ocampo received notice from the SSA stating that she was entitled to receive disability benefits after being disabled for five full consecutive calendar months and that she was awarded disability benefits for the period beginning September 2005 ("SSA Notice of Benefits Award" or "SSA Notice").

The duration of a disabling impairment for 12 months does not mean the disability is permanent. Once a claimant is awarded Social Security disability benefits, the SSA conducts periodic reviews to determine whether or not the impairment is such that the claimant continues to be eligible for disability benefits. The relevant regulation provides in part as follows:

4

Frequency of Review. If your impairment is expected to improve, generally we will review your continuing eligibility for disability benefits at intervals from 6 months to 18 months following our most recent decision. . . . If your disability is not considered permanent but is such that any medical improvement in your impairment(s) cannot be accurately predicted, we will review your continuing eligibility for disability benefits at least once every 3 years. If your disability is considered permanent, we will review your continuing eligibility for benefits no less frequently than once every 7 years but no more frequently than once every 5 years.

20 C.F.R. § 404.1590(d) (emphases added). The SSA Notice to Ocampo stated that "[d]octors and other trained staff decided that you are disabled under our rules. But, this decision must be reviewed at least once every 3 years." (SSA Notice of Benefits Award at 5 (emphasis added).)

B. Ocampo's Application for Benefits from the Benefit Funds

The Pension Plan in which Ocampo was a participant provides that "[t]he Trustees" and any properly designated committee of the Trustees "shall have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret the Plan" (Pension Plan § 7.06). The Trustees "have the sole and absolute discretionary authority to . . . formulate . . . policies necessary to administer the Plan in accordance with its terms" (id. § 7.06(b) (emphases added)) and to "make all decisions with respect to the eligibility for . . . benefits payable under the Plan" (id. § 7.06(a) (emphases added)).

The Plan provides that a "Participant may Retire with a Disability Pension if," inter alia, she "is permanently and totally disabled (as defined in Section 4.10)" (id. § 4.08(a) (emphasis added)), and "became permanently and totally disabled while working in Covered Employment" (id. § 4.08(c) (emphases added)). It defines "permanently and totally disabled" as "totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit."

5

(Id. § 4.10(a).)  With respect to an application first submitted on or after August 1, 2010, the Plan provides, as relevant here, that the participant "shall be deemed totally and permanently disabled" if

> (i) the Participant presents to the Trustees a certification of a permanent disability benefit award from the Social Security Administration showing that the Participant's disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment; [or]

> (ii) the Trustees or their authorized delegate(s) determine, in their sole and absolute discretion as provided in Section 7.06, based upon information submitted, that the Participant became totally and permanently disabled within the meaning of Section 4.10(a) before August 1, 2010 while working in Covered Employment (taking into account the presumption described in that subsection) . . . .

(Pension Plan § 4.10(b)(i) and (ii) (emphases added).)  The "presumption" referred to is that if a participant "first applie[d] for a Disability Pension more than nine months after the last day [s]he worked in Covered Employment," the participant "did not become totally and permanently disabled while working in Covered Employment"--although this presumption can be overcome by "clear and convincing evidence."  (Id. § 4.10(a).)

In September 2011, Ocampo applied to the Benefit Funds for, inter alia, long term disability ("LTD") benefits under the Building Service 32BJ Health Fund Plan ("Health Fund Plan") and a disability pension from the Pension Fund, claiming that she had become disabled in March 2005. Her application consisted only of (a) her own statements on a Fund form that she had "3 (three) herniated disc[s] and surgery to correct them" and that she did not plan to go back to work (Disability Eligibility Verification dated September 14, 2011), and (b) a one-page form completed by Ocampo's doctor.  On the latter form, Dr. Elizabeth Efiamiou wrote that her diagnosis of Ocampo was "Lumbar Radiculopathy s/p fusion," that Ocampo's symptoms first appeared on "3/22/05," and that Ocampo had

6

"[s]tayed the same" since that date. (Physician Attestation Statement of Disability dated September 14, 2011 ("Physician Form").) In response to the form question "From TODAY'S DATE, what is the expected duration of this disability," Dr. Efiamiou circled "Permanent disability." (Physician Form (capitalization in original).)

In her application to the Benefit Funds, Ocampo had checked a box stating that she had a current SSA disability benefits award, but she did not attach the SSA Notice itself. Her application to the Funds was initially denied in its entirety; the letter from the director of the Funds' Department of Eligibility denying the application stated (1) that Ocampo could demonstrate her eligibility for LTD benefits by submitting a Social Security Disability Notice of Award showing that she was totally disabled and that her disability "occurred" while she was working in covered employment; and (2) that, in order to perfect her claim for a disability pension, she needed to submit a Social Security Disability Notice of Award showing that her disability was "permanent" while she was working in covered employment. (Letter from Alberta Galdri to Francy Ocampo dated October 19, 2011 ("October 2011 Funds Letter"), at 1, 2.)

Ocampo thereafter submitted her SSA Notice of Benefits Award. In January 2012, her claim for LTD benefits was approved, but her claim for a disability pension was again denied. (See Letter from Alberta Galdri to Francy Ocampo dated January 17, 2012 ("Benefit Funds January 2012 Decision Letter" or "Decision Letter"), at 1, 2.) The Decision Letter stated that the Health Fund plan "provides that in order to be eligible for LTD benefits you must have become totally disabled while working in covered employment," that the Funds had "received [Ocampo's] Social Security Disability Notice of Award to perfect [her] claim for Long Term Disability (LTD) benefits," and that her application for those benefits was now "[a]pproved." (Id. at 1.) However, the Decision Letter stated

7

that Ocampo's SSA Notice of Benefits Award "d[id] not show that [her] disability was permanent while [she was] working in covered employment," and "[a]ccordingly, [her] application for Disability Pension [wa]s denied." (Id. at 2.)

Ocampo administratively appealed the denial of her application for a disability pension to the Benefit Funds appeals committee, which had been duly authorized by the Trustees to decide appeals from denials of benefits applications. Ocampo's attorney's letter initiating the appeal stated principally as follows:

> In support of the appeal, I have enclosed a copy of a Physician Attestation Statement of Disability by Elizabeth Efiamiou, MD., dated September 14, 2011. Also enclosed is a copy of a Notice of Fully Favorable Bench Decision and Notice of Award by the Social Security Administration dated March 26, 2007. ("Notice of Award").
>
> The basis of the appeal is that the decision to deny her application for Disability Pension conflicts with the decision to approve her application for LTD $250.00 monthly benefits. In order to receive LTD monthly benefits a member must have become totally disabled while working in covered employment. In the Decision Letter, Ms. Ocampo[] was granted LTD monthly benefits. Nevertheless, she was denied Disability Pension in the Decision Letter on the ground that her Social Security Disability Notice of Award did not show that she became permanently disabled while working in covered employment. It is respectfully submitted that if there is no dispute that she became totally disabled while in covered employment, then her Social Security Notice of Award necessarily confirms that such disability was permanent when she became totally disabled.
>
> Ms. Ocampo's LTD monthly benefits began as of October 1, 2005, which is the first of the month after 180 days from the date of total disability. Therefore, according to the Decision Letter, Ms. Ocampo became disabled while working in covered employment in March 2005. The Social Security Notice of Award determined that Ms. Acampo [sic] became permanently and totally disabled on March 22, 2005. In addition, Ms. Ocampo's physician, Elizabeth Efiamiou, MD, by report dated September 14, 2011 further confirmed that she became permanently and totally disabled on March 22, 2005.

8

In addition, the Decision Letter specifies, "Total and permanent disability is established by submitting a Social Security Disability Notice of Award which shows that your disability began while in covered employment." Both the enclosed Notice of Award and the enclosed Physician Attestation Statement of Disability confirm that Ms. Ocampo's disability began on March 22, 2005, which was a date when Ms. Ocampo was still in covered employment.

(Letter from Arthur H. Forman to Building Services [sic] 32BJ Health Fund Board of Trustees Appeals Committee dated March 19, 2012 ("Ocampo's Appeal Letter"), at 1-2 (emphases added)); see also id. at 2 (contending that it is "[a]rbitrary to fail to consider finding by SSA").

In response, a Benefit Funds compliance officer informed Ocampo by letter that her file was under review; that her appeal would be heard at the next regularly scheduled meeting of the appeals committee on June 13, 2012; and that Ocampo had a right to attend if she wished. (Letter from Elie Cheng to Francy Ocampo dated March 28, 2012 ("March 2012 Funds Letter"), at 1.) The letter also said that a total and permanent disability "can be established" by an SSA award, but that because Ocampo's SSA Notice stated that her disability decision would be reviewed at least once every three years, "[t]he award establishes that you are disabled but your disability is not considered permanent." (Id. (emphases added).) The letter noted that if the SSA considered Ocampo's disability permanent, the SSA would instead review her continuing eligibility for benefits every five to seven years. The letter stated, "[i]f you have any additional information that you would like to send for review to support your claim, you may fax it to us at [number provided] or mail it to above address." (Id.)

After considering Ocampo's appeal, the Trustees, through the appeals committee, affirmed the denial of her application for a disability pension by letter dated June 18, 2012. The letter from the Benefit Funds' executive director reiterated that if the SSA had found Ocampo's disability

9

to be permanent, the SSA would review her eligibility for disability benefits once every five-to-seven years, and that the statement in Ocampo's SSA Notice that her case must be reviewed at least once every three years demonstrated that in the SSA's view Ocampo's "disability [wa]s not considered permanent." (Letter from Susan Cowell to Francy Ocampo dated June 18, 2012, at 1.)

C. Proceedings in the District Court

Ocampo commenced the present action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), alleging that the Trustees improperly denied her application for a disability pension. The complaint alleged that defendants' denial of disability benefits to Ocampo on the ground that her disability was not permanent because the SSA will review her disability every three years, whereas defendants would consider her disability permanent if the SSA reviews would occur every five years, was arbitrary and capricious. Both sides moved for summary judgment.

Defendants, submitting a copy of the Pension Plan, contended that the Plan gave the Trustees absolute discretion to, inter alia, decide all questions relating to a Plan participant's eligibility to receive plan benefits and that the denial of Ocampo's application for a disability pension, given the SSA's classification of Ocampo's disability as not permanent, was well within the scope of the Trustees' discretion.

Ocampo urged the district court to review the Trustees' denial of her application de novo. She argued that the Trustees did not exercise any discretion in denying her claim but rather "punted the determination of [her] entitlement [to benefits] to the SSA. . . . Discretionary authority may have been exercised by the SSA in evaluating the medical and vocational evidence to determine

[her] disability, but the Trustees did nothing but adopt the SSA's tentative decision on permanence." (Ocampo Memorandum of Law in Support of Her Motion for Summary Judgment at 7.)

In an Opinion and Order dated February 14, 2014, reported at 2014 WL 687227 ("District Court Opinion"), the district court denied Ocampo's motion and granted the motion of the Pension Fund and Trustees. The court found that clear language in the Plan provided the Trustees with absolute discretion to interpret and implement the Plan, to "'make all decisions with respect to eligibility for . . . benefits payable under the Plan,'" and to determine whether an applicant is permanently disabled. District Court Opinion, 2014 WL 687227, at *4-*5 (quoting Pension Plan § 7.06(a)). Given "the clear language providing the Trustees with discretion to interpret and implement the Plan," the court found that the Trustees' decisions could not be overturned unless they were arbitrary and capricious. District Court Opinion, 2014 WL 687227, at *5. The court concluded that the Trustees' reliance on the SSA's views as to the permanence of a disability was, instead, "sound." Id. at *7. The court also concluded that Ocampo "received a full and fair review in compliance with 29 U.S.C. § 1133(2)." District Court Opinion, 2014 WL 687227, at *7 n.7.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, Ocampo contends principally that the district court erred in reviewing the decision to deny her disability pension claim under an arbitrary-and-capricious standard, and that even under that deferential standard, the district court erred in upholding the Trustees' decision. She pursues her contention that the Trustees exercised no discretion of their own but instead essentially

delegated to the SSA the determination of whether her disability was permanent, and she argues that their decision should thus be reviewed de novo. Substantially for the reasons stated by the district court, we reject Ocampo's contentions.

A. Standard of Review under ERISA

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" Pagan v. NYNEX Pension Plan, 52 F.3d 438, 441 (2d Cir. 1995) ("Pagan"); see, e.g., Fuller v. J.P. Morgan Chase & Co., 423 F.3d 104, 106-07 (2d Cir. 2005). Under the arbitrary-and-capricious standard of review, we may overturn the plan administrator's denial of benefits "only if it is found to be 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Miles v. Principal Life Insurance Co., 720 F.3d 472, 486 (2d Cir. 2013) (quoting Pagan, 52 F.3d at 442).

In addition, even if a plan gives the administrator such discretion, the denial of benefits is reviewable de novo if the decision to deny benefits is not made by the administrator but is instead made by a party that is not authorized to make such decisions under the plan. See, e.g., Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 229 (2d Cir. 1995) ("Sharkey"); Shelby County Health Care Corp. v. Majestic Star Casino, 581 F.3d 355, 365 (6th Cir. 2009); Rodriguez-Abreu v. Chase Manhattan

12

Bank, N.A., 986 F.2d 580, 584 (1st Cir. 1993). If there is a genuinely disputed issue of fact as to whether the actual decisionmaker was the plan administrator or was instead an unauthorized delegatee, a grant of summary judgment in favor of the plan administrator after review under the arbitrary-and-capricious standard is inappropriate. See, e.g., Sharkey, 70 F.3d at 229-30.

In the present case, as described in Part I.B. above, the Plan provides that the Trustees "have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret the Plan" (Pension Plan § 7.06), and that they "have the sole and absolute discretionary authority to . . . formulate . . . policies necessary to administer the Plan in accordance with its terms" (id. § 7.06(b)) and to "make all decisions with respect to the eligibility for . . . benefits payable under the Plan" (id. § 7.06(a)). Consequently, the denial of benefits by the Trustees in the exercise of the discretion granted them is reviewable only under the arbitrary-and-capricious standard.

Ocampo does not dispute that the Plan clearly gave the Trustees authority to determine her eligibility for disability pension benefits; rather she contends that "[t]he Trustees failed to exercise any discretionary authority they clearly have," pursuing her contention that they "[i]nstead . . . punted the determination of [her] entitlement . . . to the SSA" (Ocampo brief on appeal at 7). In light of the record in this case, however, there is no genuine dispute that the decision that Ocampo is not eligible for a disability pension under the Plan was made by the Trustees rather than the SSA.

First, the SSA's determination was made in 2007. Ocampo did not apply to the Funds for benefits until 2011. So far as the record shows, there has been no decision by the SSA as to Ocampo's disability since her application to the Funds.

Second, the Pension Plan provides alternative methods by which a participant may establish her eligibility for a disability pension. It provides that a post-August 1, 2010 applicant such

13

as Ocampo can establish eligibility for a disability pension either by presenting an SSA "certification of a permanent disability benefit award" (Pension Plan § 4.10(b)(i)), or by persuading the Trustees "based upon information submitted"--sufficient to overcome the § 4.10(a) presumption arising from the belatedness of her application for benefits--that she became permanently and totally disabled while working in covered employment (id. § 4.10(b)(ii)).

Ocampo has not argued that she was unaware of the alternative ways in which she could show her eligibility for a disability pension; and the Funds' letters to Ocampo stating that she could appeal the various denials of her application for benefits indicated that she could submit additional documents or information to show her eligibility for the denied benefits. (See October 2011 Funds Letter at 2 (stating that if Ocampo wished to appeal, she "should include any additional documents, records, or other evidence that you believe should be considered"); Benefit Funds January 2012 Decision Letter at 2 (same); March 2012 Funds Letter at 1 (stating in response to Ocampo's Appeal Letter that Ocampo should send the Funds "any additional information that you would like to send for review to support your claim").)

Accordingly, Ocampo's contentions that the real decisionmaker on her benefits application was the SSA and that the Trustees exercised no discretion but simply rubber-stamped SSA decisions is unsupported by the record. The district court properly reviewed the Trustees' denial of Ocampo's application under the arbitrary-and-capricious standard.

B.  The Reasonableness of the Trustees' Decision

The record also provides no support for Ocampo's contention that the Trustees' denial of her application for a permanent-disability pension was arbitrary and capricious. At least two factors

14

foreclose any conclusion that the Trustees' denial of Ocampo's application, based on her failure to demonstrate (a) permanence and (b) permanence "while working in covered employment," was unreasonable.

First, as to permanence, the Plan gives the Trustees complete authority to formulate and apply policies needed to administer the Plan in accordance with its terms. The terms of the Plan themselves require the Trustees to consider SSA determinations as to the totality and permanence of a participant's disability: As set out in Part I.B. above, the Trustees "shall . . . deem[ a participant] totally and permanently disabled" if she presents a "certification of a permanent disability benefit award from the Social Security Administration showing that [her] disability was found to have commenced on a date on which the Trustees determine the Participant was working in Covered Employment" (Pension Plan § 4.10(b)(i) (emphases added)). Accordingly, the Trustees must determine whether a given SSA award constitutes a "certification" of a "permanent" disability.

As set out in Part I.A. above, the SSA has regulations calling for periodic reviews of the continued eligibility of disability award recipients, with the frequency of such reviews linked to the agency's ability to identify the likely duration, and prospects for improvement, of a claimant's particular disability. If an impairment "is expected to improve," a review is generally to occur in 6-18 months; if the "disability is not considered permanent but . . . improvement . . . cannot be accurately predicted," a review is to occur "at least once every 3 years"; if the "disability is considered permanent," a review is to occur in not less than five years. 20 C.F.R. § 404.1590(d) (emphasis added). The SSA classifies as "[p]ermanent" an "extremely severe condition" that, based on its experience in administering the disability programs, the SSA has determined "to be at least static, but more likely to be progressively disabling." Id. § 404.1590(c) (emphasis added).

15

Although Ocampo argued to the appeals committee that "[t]he Social Security Notice of Award determined that [she] became permanently and totally disabled on March 22, 2005" (Ocampo's Appeal Letter at 1 (emphases added)), the committee reasonably rejected that characterization, for the SSA Notice awarding her disability benefits did not state or even imply that her disability had been determined to be permanent. To the contrary, the SSA Notice stated that her eligibility to continue receiving Social Security Disability Benefits would be reviewed at least once every three years; under the regulations, this plainly was a ruling that, although the SSA could not accurately predict improvement in Ocampo's condition, the SSA did not consider her disability to be permanent, i.e., likely to worsen or at least remain the same.

Second, as to whether Ocampo became "permanently . . . disabled while working in Covered Employment" (Pension Plan § 4.08(c) (emphases added)), the Plan states a presumption that if a participant's application for a disability pension is first filed "more than nine months after the last day [s]he worked in Covered Employment, it shall be presumed that the Participant did not become totally and permanently disabled while working in Covered Employment" (id. § 4.10(a) (emphases added)). Here, Ocampo became disabled in March 2005 but did not apply for disability benefits until 2011. The presumption, which recognizes the difficulties that are often inherent in determining a person's medical status and prognosis at a remote point in time, may be overcome by the applicant's "providing clear and convincing evidence that [s]he became totally and permanently disabled while [s]he was working in Covered Employment" (id.). Although Ocampo complains that the Trustees gave inadequate consideration to the fact that her physician "unequivocally indicated that Mrs. Ocampo's disability is permanent" (Ocampo brief on appeal at 11), the "indicat[ion]" to which she refers consisted of Dr. Efiamiou's circling the words "Stayed the same" since the onset date of March

16

22, 2005, and circling the words "Permanent disability" in response to the question on the Physician Form, which Dr. Efiamiou dated September 14, 2011, as to "the expected duration of" the disability "From TODAY'S DATE" (Physician Form (capitalization in original)). That form is "the only medical evidence of record." (Ocampo brief on appeal at 11.) We cannot conclude that the Trustees were required to view these form responses as clear and convincing evidence that Ocampo's disability was permanent as of March 22, 2005, when she last worked in covered employment.

Ocampo's brief on appeal laments that "[t]he record proffered has limited information about Mrs. Ocampo." (Ocampo brief on appeal at 8.) Although that is true, the burden was on Ocampo in the administrative proceedings to prove her eligibility for a disability pension under the terms of the Plan, see, e.g., Miles v. Principal Life Insurance Co., 720 F.3d at 488, and she was repeatedly informed that she could submit additional materials in challenging the denials of her application. The district court did not err in ruling that the Trustees did not act arbitrarily or capriciously in concluding that she did not meet that burden.

## CONCLUSION

We have considered all of Ocampo's arguments in support of her appeal and have found them to be without merit. The judgment of the district court is affirmed.