Stein J. HAERUM, George B. Gebhardt, William R. Frey, Jr., Steven T. Black, Gary D. Betting, Duane W. Clawson, Stephen F. McKeon, Stephen A. Verrill, Kenneth E. Newberry, and David M. Goldman, Appellants,

v.

The AIR LINE PILOTS ASSOCIATION and its Piedmont Master Executive Council, Appellees.

No. 244, Docket 89–7571.

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1989.

Decided Dec. 20, 1989.

Jules L. Smith (Alan R. Peterman, Blitman and King, Syracuse, N.Y., of counsel), for appellants.

Eugene B. Granof (Gary Green, Jonathan A. Cohen, Elizabeth A. Ginsburg, Air Line Pilots Ass'n, Washington, D.C., of counsel), for appellees.

Before OAKES, Chief Judge, and KEARSE and ALTIMARI, Circuit Judges.

OAKES, Chief Judge:

A group of pilots formerly employed by Empire Airlines ("Empire pilots") appeal a judgment of the United States District Court for the Northern District of New York, Neal P. McCurn, Chief Judge, granting summary judgment in favor of the Air Line Pilots Association ("ALPA") and its Piedmont Master Executive Council ("Piedmont MEC") upon the Empire pilots' claim that the union breached its duty of fair representation under the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (1982 & Supp. V 1987). We affirm.

In October 1985, Piedmont Aviation proposed acquiring Empire Airlines. At that time, appellee ALPA was the bargaining representative under the Railway Labor Act for the pilots then working for Piedmont ("Piedmont pilots"), but not for the Empire pilots. Following announcement of the proposed merger, Piedmont and ALPA proceeded to negotiate a seniority list integrating the Piedmont pilots with the Empire pilots. Allegedly, the integrated seniority list resulted in the Empire pilots receiving seniority rights inferior to those of the Piedmont pilots.

Empire and Piedmont subsequently submitted the terms of the proposed acquisition to the Department of Transportation ("DOT") for its approval pursuant to 49 U.S.C.App. §§ 1378(b)(1) & 1551(b) (1982). After the DOT granted its preliminary approval on December 9, 1985, the Empire pilots filed comments opposing the merger on grounds that the seniority provisions would be unfair to Empire employees and that the merger thus was not in the public interest as required by 49 U.S.C.App. § 1378(b)(1). The Empire pilots requested the DOT to deny final approval of the merger unless Piedmont entered into collective bargaining, and arbitration if necessary, with the Empire pilots to resolve their seniority rights more equitably.

On January 23, 1986, the DOT granted final approval for the acquisition and, in so

doing, rejected the Empire pilots' call for additional collective bargaining. The DOT advanced a number of rationales for setting aside the Empire pilots' plea for added protection. It noted, first, that the impending acquisition did not pose a threat of future labor strife; second, that Government policy ordinarily deferred to the free market to regulate private sector labor disputes; third, that the Empire pilots lacked a bargaining representative with which Piedmont and ALPA could negotiate; and, finally, that the acquisition overall improved the Empire pilots' wages and working conditions. Although the Empire pilots had a right to appeal the DOT's decision to a federal court of appeals, *see* 49 U.S.C. App. § 1486 (1982), they did not do so and instead let the decision stand.

Following the merger, the former Empire pilots, now Piedmont employees, remained dissatisfied with their seniority status vis-a-vis the long-time Piedmont pilots. In mid–1987, when USAir proposed merging with Piedmont, the former Empire pilots used this as an opportunity to revive their grievances from the earlier Empire–Piedmont merger. At the November 1987 meeting of the Piedmont MEC (ALPA's administrative subdivision governing pilots working for Piedmont), Donald Cox, a former Empire pilot, moved that the Piedmont MEC negotiating committee meet with Piedmont to renegotiate the existing seniority agreement. Cox's proposal envisioned that ALPA and the Piedmont MEC would work to secure the former Empire pilots a higher position on the Piedmont seniority ladder than the former Empire pilots had received from the 1985 negotiations. Cox asserted that seniority renegotiation was necessitated both by the impending USAir–Piedmont merger and the disaffection felt by the former Empire pilots regarding their placement on the seniority list following the 1985 Piedmont–Empire merger. Cox's motion failed. The record indicates that the MEC did not debate the proposal either before or after voting upon it.

The former Empire pilots thereafter filed suit in the United States District Court for the Northern District of New York on January 19, 1988, alleging that ALPA and the Piedmont MEC breached the duty of fair representation under the Railway Labor Act. They based their action, first, on ALPA's and the Piedmont MEC's refusal to file a grievance on behalf of the former Empire pilots pertaining to their claim that they were not receiving the full wages due under the collective bargaining agreement between Piedmont and ALPA. Second, the Empire pilots alleged that ALPA's and the Piedmont MEC's refusal in November 1987 to renegotiate the seniority list also constituted a breach of the duty of fair representation.

On cross-motions for summary judgment, the district court granted summary judgment in favor of ALPA and the Piedmont MEC. The district court held that the Empire pilots had not produced any evidence to show that the ALPA or Piedmont MEC, in failing to file the wage grievance, either had exceeded its discretion or had acted discriminatorily, arbitrarily, or with hostility towards the Empire pilots. Concerning the portion of the Empire pilots' claim based upon ALPA's and the Piedmont MEC's refusal to renegotiate the seniority agreement, the district court ruled that the Empire pilots' attempt to support their claim by reference to the unfairness of the 1985 seniority agreement was barred by the six-month statute of limitations on duty of fair representation actions. Additionally, the district court held, any such argument attacking the adequacy of the 1985 seniority agreement would constitute an impermissible collateral attack on the 1986 DOT order approving the merger. Considering, therefore, only the "changed circumstances" after the Empire–Piedmont merger and the events immediately surrounding the Empire pilots' plea for renegotiation, the district court ruled that the Empire pilots had not mounted enough of a case to withstand a motion for summary judgment. On appeal, the Empire pilots do not challenge the district court's ruling as it pertains to their wage grievance and instead attack the ruling only insofar as it pertains to ALPA's and the Piedmont MEC's refusal to renegotiate.

Although we disagree with the district court and find that the Empire pilots may use ALPA's and the Piedmont MEC's conduct during the 1985 negotiations to establish its duty of fair representation claim, we nevertheless affirm the district court's conclusion that the Empire pilots have not established sufficient issues of fact to withstand summary judgment.

## DISCUSSION

A. *Use of Events from the 1985 Seniority Agreement*

■ 1. *Statute of Limitations.* The Railway Labor Act, 45 U.S.C. § 151 *et seq.*, governs the rights and responsibilities as between air carriers and their employees. *See* 45 U.S.C. § 181 (1982). The Act imposes upon a union the duty to provide fair representation to all members of its collective bargaining unit. *See Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 198–204, 65 S.Ct. 226, 230–33, 89 L.Ed. 173 (1944). Charges alleging a breach of a union's duty of fair representation under the Railway Labor Act are subject to a six-month statute of limitations. *See Welyczko v. U.S. Air, Inc.*, 733 F.2d 239, 240 (2d Cir.), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984). Accordingly, the Empire pilots are time-barred from claiming that ALPA's and the Piedmont MEC's conduct during the 1985 negotiations constituted a breach of the duty of fair representation.

■ It does not necessarily follow, however, that the six-month statute of limitations bars the Empire pilots from using events surrounding the formation of the 1985 seniority agreement to prove that the failure to renegotiate the seniority agreement in 1987 constituted a breach. In *Local Lodge No. 1424, International Associ-*ation *of Machinists v. NLRB*, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), the Supreme Court accepted that events occurring outside of the six-month limitations period "may be utilized to shed light on the true character of matters occurring within the limitations period." *See id.* at 416, 80 S.Ct. at 826. On the other hand, the Court held that a labor practice benign on its own which occurs within the limitations period may not be proven to be an unfair labor practice "only through reliance on an earlier [time-barred] unfair labor practice." *See id.* at 417, 80 S.Ct. at 827. Although the Court placed the claim at issue in *Local Lodge* in the latter category, *see id.* at 417–23, 80 S.Ct. at 827–30, we find the situation presented in this case distinguishable from that which existed in *Local Lodge*. Here, ALPA's and the Piedmont MEC's refusal to renegotiate the seniority list when asked to do so in November 1987 could be proven a breach of the union's duty of fair representation entirely independent of the 1985 events. Certainly, the Empire pilots' case is greatly advanced by reference to the 1985 events surrounding the initial formation of the integrated seniority list. However, these events do not constitute the substantive violation itself and instead do no more than potentially "shed light" upon the union's refusal to renegotiate the seniority list in 1987. Accordingly, we hold that the six-month statute of limitations governing duty of fair representation claims under the Railway Labor Act does not bar the Empire pilots from using events from the 1985 formation of the Piedmont–Empire integrated seniority list to help prove that the refusal in November 1987 to renegotiate the list breached the duty of fair representation.[1]

■ 2. *Collateral Attack.* We likewise hold that the 1986 DOT order approving

---

1. The Empire pilots devote considerable attention to three cases, *Ratkosky v. United Transp. Union*, 843 F.2d 869 (6th Cir.1988); *Eatz v. DME Unit of Local Union No. 3, IBEW*, 794 F.2d 29 (2d Cir.1986); *Adam v. Brotherhood of Ry. Carmen*, 125 L.R.R.M. 2126 (BNA) (W.D.N.Y.), *aff'd*, 833 F.2d 1002 (2d Cir.1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987), to support the contention that invoking events from the 1985 agreement does not trans-gress the six-month statute of limitations. Because neither *Ratkosky* nor *Adam* address the extent to which a breach of duty of fair representation claim may rest upon events occurring outside the limitations period to "shed light" upon events occurring within the limitations period, they are inapposite. Although *Eatz* does address this issue, the facts of *Eatz* are not sufficiently analogous to this case to afford useful comparison.

Piedmont's acquisition of Empire poses no bar to the Empire pilots' showing that ALPA acted improperly when it negotiated the integrated seniority list in 1985. Appellees place great weight upon our decision in *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635 (2d Cir.1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986), in arguing that the DOT order poses such a bar. We find *Cook* is not controlling.

On its face, *Cook* appears quite similar to this case. *Cook* arose out of Pan American's 1980 acquisition of National Airlines. The Civil Aeronautics Board ("CAB"), which in 1980 occupied the role assumed by the DOT since 1985 of scrutinizing airline acquisitions for consistency with the public interest under 49 U.S.C.App. § 1378(b)(1), *see* 49 U.S.C.App. § 1551(b), approved the merger agreement conditional upon additional collective bargaining, and arbitration if necessary, to integrate the respective seniority lists. After collective bargaining failed, an arbitrator formulated a plan to resolve the impasse, which Pan American in turn agreed to implement. *See Cook*, 771 F.2d at 636–38. Two groups of workers returned to the CAB and challenged the arbitrator's plan. The CAB declined to set aside the integrated seniority list, ruling that the prior lists had been integrated without "bad faith" and thus in a "fair and equitable manner." The CAB, moreover, found that the aggrieved workers had received adequate representation during the list's formation. The aggrieved workers did not exercise their right to appeal the CAB's order. *See id.* at 638–39.

The aggrieved workers subsequently filed suit alleging that their bargaining representative's action during the formation of the integrated seniority list breached the duty of fair representation under the Railway Labor Act. This court held the duty of fair representation claim foreclosed by the CAB order approving the seniority list. Because the CAB had the statutory power "to determine whether the unions involved have fairly represented their members in the negotiations and ensuing arbitration proceedings" and "did just that in the present case," *see id.* at 645, this court

ruled that the workers' subsequent duty of fair representation claim constituted an impermissible collateral attack upon the CAB order.

This case stands on a different footing than *Cook*. We read *Cook* to stand for a proposition, analogous to the sensible rule governing collateral estoppel of judicial determinations, that an issue actually litigated and necessarily decided by the CAB, or its successor DOT, may not be relitigated in a later lawsuit. *See* C. Wright, *The Law of Federal Courts* 682 (4th ed. 1983) (outlining the standard governing collateral estoppel). Accordingly, in *Cook*, the plaintiffs raised the question of whether they had been fairly represented in the proceedings leading to the formation of the integrated seniority list, and the CAB directly answered that very question.

Here, even assuming that the DOT's final order actually decided the question of whether the 1985 agreement had proven *substantively* fair to the Empire pilots, it did not directly answer the question of whether the *procedures* under which the Empire pilots' seniority rights were determined were fair. Standing alone, the fact that a merger might result in improved wages or working conditions for a group of employees, as the DOT found here, does not necessarily prove that the union has done all it should have done to further those employees' interests.

Moreover, appellees' assumption that the DOT actually determined that the 1985 agreement was substantively fair to the Empire pilots, so as to warrant attaching preclusive effect to it, is flawed. Unlike *Cook*, in which the CAB apparently limited itself to examining the substantive and procedural fairness of the contested seniority agreement, in this case, the DOT tossed out a series of responses for why it declined to require additional collective bargaining. For instance, the DOT stated that it would not order further collective bargaining, because, in its opinion, there was not a threat of labor strife, which it deemed a necessary predicate for conditioning approval of the merger upon *additional* bargaining. It also noted that disputes such

as those in this case are best resolved by the free market. Finally, the DOT ruled that it could not order collective bargaining, because the Empire pilots did not have a certified collective bargaining agent with which Piedmont could bargain. In light of the many alternate grounds for the DOT's refusal to require additional collective bargaining, its determination that the Empire pilots' wages and working conditions improved because of the merger very well may have been gratuitous and thus unnecessary to its decision.

Because the DOT's 1986 final determination approving the Piedmont–Empire merger did not necessarily decide whether the Empire pilots were treated fairly during the negotiations leading up to the integrated Piedmont–Empire seniority list, use of events tending to show unfair treatment during the formation of the integrated seniority list would not constitute an impermissible collateral attack on the DOT order.

### B. *Summary Judgment*

Even though we rule that the Empire pilots may use events stemming from the formation of the integrated 1985 seniority list to prove their claim of a 1987 breach of the duty of fair representation, we find that this still does not boost the Empire pilots over the summary judgment hurdle.

■ As we have observed in an earlier case, "[t]he objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir.1974). The duty of fair representation does not require that a union achieve absolute equality among its members. Rather, because a union by necessity must differentiate among its members in a variety of contexts, *see Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), a showing that union action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation. *See Bernard v. Air Line Pilots Ass'n, Int'l, AFL–CIO*, 873 F.2d 213, 216 (9th Cir.1989); *Dement v.*

*Richmond, Fredericksburg & Potomac R.R. Co.*, 845 F.2d 451, 457–58 (4th Cir. 1988). Thus, to prove a breach of the duty of fair representation, a union member must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967).

■ The proposal offered by Cox on behalf of the Empire pilots during the November 1987 Piedmont MEC meeting sought to place the Empire pilots higher on the Piedmont seniority ladder prior to integration of the Piedmont and USAir seniority lists. The Empire pilots argue that such a reshuffling of the Piedmont seniority list was necessary to compensate for losses suffered by the Empire pilots from the 1985 integration and to prevent a further deterioration of the Empire pilots' relative seniority after the Piedmont–USAir merger. Observing that the Piedmont MEC voted down the proposal without discussion, the Empire pilots assert that the MEC's failure to give the proposal more reasoned consideration, especially in light of its importance to the Empire pilots, was arbitrary and unjustified, thus violating the duty of fair representation.

We disagree. We do not believe that the failure to entertain debate during or after the vote in any way establishes that the vote was arbitrary. Moreover, it is significant to us that the Empire pilots, who now claim that such discussion was necessary, make no showing that they requested any additional discussion following the vote.

While the Empire pilots fail to show why the Piedmont MEC's rejection of the proposal was irrational, ALPA offers two reasons justifying the rejection. First, the Empire pilots' proposal would have forced ALPA to juggle the existing seniority ladder and thereby would have exposed it to countervailing claims from Piedmont pilots. Second, section G.1 of the ALPA merger policy in effect at the time of the November 1987 proposal required that "[n]o integrated list shall be constructed which would change the order of the flight deck operating crew members on their own respective seniority lists." The Empire pilots

assert that they did not seek to change the order of the existing Piedmont–Empire list during the process of integrating that list with the USAir list. Instead, they argue that they sought to readjust the Piedmont list *before* the Piedmont–USAir list integration. Although section G.1 does not apply explicitly to a situation in which a union member seeks to reorder a seniority list in anticipation of an integration of two merging seniority lists, we do not think it unreasonable for ALPA to have read this provision to bar a proposal which would have achieved virtually the same consequences as a reordering in the midst of a list integration.[2]

Consideration of the events from the 1985 integration of the Piedmont and Empire lists does not change our analysis. Although those events may establish that the Empire pilots were disadvantaged by that agreement, those events would not alter the fact that, while ALPA has offered several explanations to show that its refusal to accept the November 1987 proposal was neither hostile, discriminatory, nor made in bad faith, the Empire pilots have made an insufficient showing that it was.

Judgment affirmed.

KEARSE, Circuit Judge, concurring:

I concur in the judgment, but I would affirm the decision of the district court on the basis of the rationale adopted by that court.

As the majority opinion indicates, the proposal advanced by appellants to appellees was urged largely on the ground that it "was necessary to compensate for losses suffered by the Empire pilots from the 1985 integration." Majority opinion, *ante* at 221. In my view, the district court properly ruled that (a) to the extent appellants' present suit constitutes a direct challenge to the 1985 integration of the Empire and Piedmont seniority lists, it is barred both by the six-month statute of limitations and as a collateral attack on the 1986 order of the United States Department of Transportation; and (b) to the extent that the suit does not challenge the 1985 events, it is entirely insufficient to pose a claim of breach of the duty of fair representation.

**2.** Perhaps anticipating the problems with this line of attack, counsel for the Empire pilots during oral argument offered a new interpretation of their proposal. Counsel claimed that ALPA could have satisfied the Empire pilots' needs without compromising the existing seniority prerogatives of the Piedmont pilots by instituting a slightly complicated cross-bidding system. Under this system, whenever a job opportunity would become available, the union would first compare the seniority of the highest bidding pilot from the Piedmont list with that of the pilot from the USAir list. If the Piedmont pilot had more seniority, he would take the job. However, if the USAir pilot had more seniority, the union would look back to the applicant from the Piedmont list. If that Piedmont applicant were a former Empire pilot, the union would not consider that pilot's Piedmont seniority, but instead would recalculate the pilot's seniority from his original date of hire with Empire. If the former Empire pilot's date of hire with Empire came earlier than the USAir pilot's date of hire with USAir, the Empire pilot would take the job. Otherwise, the job would go to the USAir pilot.

Although this proposal sounds clever, it was not the proposal made before the Piedmont MEC in November 1987. Accordingly, we cannot hold appellees responsible for failing to consider an option the Empire pilots never presented to them. Moreover, this proposal would have required ALPA to disadvantage its members within USAir, ensuring that many of them would be outbid by Empire pilots who had accumulated little seniority with Piedmont prior to the Piedmont–USAir merger. Even had the Empire pilots presented this proposal, ALPA and the Piedmont MEC would have had reason to worry about its consequences upon the USAir employees. Additionally, counsel's representations at oral argument contradict the argument made by the Empire pilots in their briefs that they were seeking only renegotiation of the 1987 Piedmont list and not any shuffling around of the pending Piedmont–USAir integrated list.