16-733-cv

Pruter, et al v. Local 210's Pension Tr. Fund, Local 210, Int'l Bhd. of Teamsters

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued:     November 8, 2016          Decided: June 6, 2017)

Docket No. 16-733-cv

_____

JANET PRUTER, RAYMOND MARQUES, JOHN ARTATES, ELIZABETH
AYALA, URSULA BILOSCHAETZKE, DIANE BLAKE, MIREILLE BOYD,
MARGO BRADY, IRENE BULLARD, CHERYLE CANNON, RHONDA
CHANG-SCHOKNECHT, LISA MARIE COMALLI, VERNEDIA CRAWLEY,
SUSAN DEARING, GUDRUN DEVITO, TAMMY DURANT, PAMELA ECCLES,
CHRISTINE ERDODI, MARGARUITE EVERLY, SUZANNE K. FLEISHER,
MARGARET FOGG, DONNA FRITZ, PATRICIA GEORGE, MARTHA JANE
GIBSON, CLAUDIA GODDARD, PAUL GRAHAM, BOBBI S. GRIFFEY,
KIMBERLY GRIFFITH, LINDA GRIFFITHS, EDWARD T. HARTNACK, III,
ELIZABETH HEFFERNAN, PATRICIA HERRON, TROEN HULETT, VANESSA
HYNES, CHARLES I. IRBY, MAUREEN JEPSON-ZAR, BENEDICT JOHNSON,
DONNA KORMAN, LONISE LARBIG, KELLY LAVIK, ARTHUR LEE,
BARBARA LEKICH, ANN LLYOD, KAREN L. LOWE, HASSINE MANAI,
DALE MARTIN MCNULTY, BERNARD MCPHAIL, JEROME MEADOWS,
BEVERLY MONTE, MARY STEPHANIE MOORE, PENELOPE MOORE,
MIRIAM DENORIS MOULTRIE, GERDA MUELLER, RAMIRO A. MURILLO,
IRMGARD NEUKAMM, STEPHEN OUELLET, DENISE D. PARKER, ALAIN
POULENARD, SHARON PRATT, GREGORY RAMIREZ, DAVID RATHERT,
MARY YUEN RATHERT, LINDA CHANEY RICE, GARY J. RODRIGUES,
VIRGINIA SAXTON, OLAF SCHOKNECHT, SHERRY SEVERN, ARLENE

SHAW, WENCKE A. SHISHIDO, BYRON SHUFORD, KEVIN S. SMITH, SUSAN SPACKMAN, RHONDA SPENCER-SAMS, JULIE E. STONE, STEPHANIE SUGANUMA, CHRISTINE A. TITTIGER, KENNETH F. TOMLINSON, MICHAEL TOUZARD, PATRICIA B. TUNNEY, DOUGLAS TURICH, OLIVIA L. VADEN, YVONNE FLORENCE VERLICCHI, BONITA SHAW WELLS, KATER WESTERMAN-SCHMID, HERMINE WHALON, PAMELA WITBRO, NICHOLAS WRIGHT,

*Plaintiffs-Appellants,*

v.

LOCAL 210'S PENSION TRUST FUND, LOCAL 210, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,

*Defendants-Appellees.*

_____

Before: CABRANES, POOLER, and PARKER, *Circuit Judges*.

Plaintiffs, former employees of World Airways, Inc., appeal from the February 8, 2016 memorandum and order of the United States District Court for the Southern District of New York (Torres, *J.*) dismissing their complaint seeking damages for fraud, breach of contract and violation of an employee benefit plan. *Pruter v. Local 210's Pension Tr. Fund*, No. 15 Civ. 1153, 2016 WL 908303 (S.D.N.Y. Feb. 8, 2016). We agree with the district court that plaintiffs' state law claims arise under the Railway Labor Act ("RLA") and are thus preempted. As those claims

2

bear a close resemblance to claims brought pursuant to the Employee Retirement Income Securities Act ("ERISA"), however, we find it appropriate to borrow and apply ERISA's three-year statute of limitations rather than the six-month limitations period the district court borrowed from Section 10(b) of the National Labor Relations Act ("NLRA"). We therefore **VACATE** the district court's dismissal of the RLA claims brought against Local 210 and **REMAND** for further consideration of that claim consistent with this opinion. We **AFFIRM** the district court's opinion in all other respects.

Affirmed in part; vacated and remanded in part.

_____

ARTHUR Z. SCHWARTZ, Advocates for Justice, Chartered Attorneys, New York, NY, *for Plaintiffs-Appellants*.

MYRON D. RUMELD, Proskauer Rose LLP (Anthony S. Cacace, *on the brief*), New York, NY, *for Defendant-Appellee Local 210's Pension Trust Fund*.

ANDREW S. HOFFMAN, Hoffman & Associates, New York, NY, *for Appellee Local 210, International Brotherhood of Teamsters*.

POOLER, *Circuit Judge*:

Plaintiffs, former employees of World Airways, Inc., appeal from the February 8, 2016 memorandum and order of the United States District Court for the Southern District of New York (Torres, *J.*) dismissing their complaint seeking damages for fraud, breach of contract and violation of an employee benefit plan. *Pruter v. Local 210's Pension Tr.*, No. 15 Civ. 1153 (AT), 2016 WL 908303 (S.D.N.Y. Feb. 8, 2016). We agree with the district court that plaintiffs' state law claims arise under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, and are thus preempted. As those claims bear a close resemblance to claims brought pursuant to the Employee Retirement Income Securities Act ("ERISA"), however, we find it appropriate to borrow and apply the three-year statute of limitations set forth in Section 1113 of ERISA rather than the six-month limitations period the district court borrowed from Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b). Our holding is consistent with our precedents "reject[ing] the argument that uniformity among borrowing limitations is needed among all labor cases" since suits against unions "encompass[] many varieties of actions." *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1059 (2d Cir. 1992). We therefore **VACATE** the district court's dismissal of the RLA claims brought against Local 210 and **REMAND** for further consideration of that claim

4

consistent with this opinion. We **AFFIRM** the district court's opinion in all other respects.

**BACKGROUND**

Plaintiffs are former employees of World Airways, Inc. and participants in Local 210's Pension Trust Fund (the "Fund"). The Fund provides pension benefits to participants and beneficiaries pursuant to an employee benefit plan (the "Plan"). The Plan is a multiemployer plan within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002. Pension benefits are paid based on service credits. Service credits are generally earned based on an employee's years of covered service, that is, service for a contributing employer while an employee is a participant in the Plan. Service credits may also be awarded based on past credited service, which is a credit for an employee's periods of covered service with an employer that predate the employer joining the Plan. The Plan also allows for the cancellation of past service credits if (1) the participant's employer is no longer a participating employer in the Plan and (2) cancelling the past service credits is in the interest of preserving the Fund's actuarial soundness. The Plan grants the Fund's trustees (the "Trustees") "the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply[,] and

5

interpret the Plan," and "to decide all matters arising in connection with the operation or administration of the Plan." App'x at 83 § 10.1.

Until 1996, World Airways employees were represented for collective bargaining purposes by the International Brotherhood of Teamsters Local 732. The collective bargaining agreement between the World Airways and Local 732 provided that Plaintiffs were to be enrolled in World Airway's retirement plan (the "Target Benefit Plan"). World Airways was obligated to pay 1.8 percent of each employee's gross annual salary into the Target Benefit Plan.

In 1996, Local 732 merged with the International Brotherhood of Teamsters Local 210, after which Plaintiffs were represented by Local 210. In the spring of 1996, Local 210 took over negotiations with World Airways for a new collective bargaining agreement. Plaintiffs allege that, as part of those negotiations, Local 210 offered to replace the Target Benefit Plan with the Plan. Plaintiffs allege that Local 210 promised them that (1) World Airways would be required to make a monthly contribution for post-1996 service and for past service time after participants completed a five-year vesting period; and (2) Local 201 would assume all pension liability for past service credit if World Airways could not or would not fund the Plaintiffs' past service credits.

6

A June 17, 1996 letter sent from the Local 210 negotiating team to Local 210 members, including Plaintiffs, stated in relevant part:

**PENSION AND PENSION VESTING GUARANTEE**

**[International Brotherhood of Teamsters] Demand:**

> The [T]arget [B]enefit [P]lan provided by [World Airways] is woefully inadequate and must be replaced. It operates on the assumption that the money contributed by [World Airways] will earn 8% interest and it has consistently failed to do so. [World Airways] refused to take on the financial burden that would provide each of us with a decent retirement.
>
> We are very pleased to advise that Local 210 offers retirement plans for its members where the employer does not have sufficient funds or is unwilling to commit the necessary cash to provide a viable retirement. Local 210 has designed a federally insured, 100% funded, **"defined benefit plan"** to which [World Airways] will provide monthly contribution with a 100% past service credit after a 5 year vesting period. This will provide an extraordinary improvement in our benefit from today's level.
>
> This is possible because, while [World Airways] will never contribute enough money to have purchased the benefit for us, our Union (and the members of our local who will vote to accept us into their plan) are willing to accept the liability to protect and make a long term commitment to represent us.

App'x at 109.

In a July 9, 1996 letter to all Local 210 members on reaching a new agreement, Local 210's trustee-agent stated:

> I would like to explain to you the depth of commitment this Local union has for its new members. With the approval of Secretary-Treasurer Angelo Martin, this Local created a new Pension Plan for the employees at World Airways. This plan which I negotiated into your contract, gives Pension credit to all members back to the date of hire, after vesting. In other words if you have worked for the company for ten (10) years to date, and you work another five (5) years, at retirement you will receive <u>$600.00 per month for life</u>.
>
> This Pension Plan has a cost to the Union of over $700,000.00 which we are willing to pay to secure a better tomorrow for our new members.

App'x at 112.

Plaintiffs allege that, as a result of these representations, they agreed to ratify the collective bargaining agreement, switch to the Plan, and accept a lower amount of wage increases in return for payments into the Fund by World Airways. Plaintiffs, who all have five years of post-1996 work credit with World Airways, allege that each was "advised, on numerous occasions, that he or she had been given past-service credit," and that, as a result, "each was to receive 100 percent of their service credit for the years before World began to contribute to

8

the Plan." App'x at 121-22. Plaintiffs also allege that World Airways made "contributions between 1996 and 2001 over and above what they were obligated to pay for post-1996 pension credit for each of the Plaintiffs, so that by 2001 they had funded the pre-1996 service credits and turned them into 'future' service credits under the terms of the [] Plan." App'x at 33 ¶ 109.

World Airways filed for bankruptcy protection in 2012. Once it entered bankruptcy, World Airways ceased to be a contributing member of the Fund and was assessed withdrawal liability pursuant to ERISA in excess of $18 million. World Airway's withdrawal liability was discharged in bankruptcy.

In December 2012, the Fund's trustees (the "Trustees") voted to cancel the past service credits of World Airways' employees, including Plaintiffs, pursuant to the terms of the Plan that vests the Trustees with discretion to act in the interests of preserving the actuarial soundness of the Fund. That language vests the Trustees with broad authority to "cancel the past service credits in the interests of preserving the Fund's actuarial soundness." App'x 90-91 § 14.5(b). On remand, the district court need not reconsider the Plaintiffs' arguments related to whether the Trustee had authority to cancel credits under the Plan's terms.

9

The Trustees told Plaintiffs that neither World Airways, nor any other party, had funded the pre-1996 service credits. Plaintiffs, through counsel, asked to review the record of contributions from World Airways to the Fund, but the request was denied. Plaintiffs allege that the cancellation of credits from before 1996 drastically reduced their monthly pension benefit.

The Trustees informed Plaintiffs that the Fund's third-party administrator verified that World Airways did not make any contributions for service prior to 1996. The Trustees asked Plaintiffs to submit any documentation that supported their claim that past service credits had, in fact, been funded. Plaintiffs submitted a letter to the Fund on May 8, 2013 stating that:

> We are not saying that contributions were made prior to 1996. We are saying that after 1996, World made extra contributions to cover the pre-1996 period. Every member of the union's negotiating team confirms that this was the arrangement.

App'x at 130. On June 5, 2013, the Trustees advised Plaintiffs that the Fund's actuary conducted another examination of the contribution records of the Fund and determined that World did not make extra contributions to fund the pre-1996 service credits. The Trustees again asked Plaintiffs if they had any "documentation or evidence to substantiate their allegations that additional

10

contributions were made on their behalf" by World Airways. App'x at 131-32. Plaintiffs' counsel responded that Plaintiffs were relying on "discussion with flight attendants who served on Local 210's negotiating committee, and who discussed the agreement with World, in making our assertions. The Fund and its actuaries would have the details, which is why we would want to meet." App'x at 133.

The Trustees made a final determination denying Plaintiffs' claims on June 14, 2013, relayed via counsel:

> I have advised you that the actuary for Local 210's Pension Plan ("Plan") has reviewed the files and contributions made on behalf of the World Airways ("World") flight attendants and has found no evidence that would support your claim that additional contributions were made to fund the past service credits for the flight attendants. The contributions received by the Plan are consistent with future credits only. Since your clients have no evidence to sustain their claim and the Plan's documents indicate that no additional or enhanced payments were made to fund past service credits, my client sees no point in meeting with your clients to discuss this matter.
>
> . . .
>
> As for your question as to whether your clients have exhausted their administrative appeals, I have no way of responding to that query. You have advised me you have over forty (40) clients. I do not know their

11

identities or where they are in the administrative process.

App'x at 134-35.

Plaintiffs then brought the instant suit. Their complaint alleges that the Trustees violated the terms of the Plan by cancelling past service credits earned by Plaintiffs and that Local 210 committed fraud and breach of contract by promising to fund the service credits and then reneging on that promise. The Fund and Local 210 moved to dismiss, and the district court granted their motions. The district court determined that Plaintiffs' breach of contract and fraud claims were preempted by the RLA and thus were subject to a six-month statute of limitations. *Pruter*, 2016 WL 908303, at *3. It dismissed the claims against Local 210 as time barred by a six-month statute of limitation. *Id.* The district court also dismissed the claim against the Fund on the ground that the decision to remove the past service credits was not arbitrary and capricious. *Id.* at *2. This appeal followed.

## DISCUSSION

"We review de novo a district court's dismissal of a complaint for failure to state a claim, accepting all factual allegations in the complaint as true and

drawing all reasonable inferences in plaintiffs' favor." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

**I.      Preemption of State Law Claims by the Railway Labor Act**

Plaintiffs first argue that the district court erred in finding that their state law claims alleging fraud and breach of contract against Local 210 were preempted by the RLA because they do not seek to enforce, interpret, or otherwise challenge the ratification process or collective bargaining agreement. We disagree and hold that their state law claims were preempted. The RLA preempts potentially conflicting state causes of action even if the state law does not actually conflict with the federal law and regardless of the nature of the state law claim, whether it be tort, contract, or a specialized labor statute. *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 57-60 (2d Cir. 2009). The RLA explicitly governs bargaining concerning pay or working conditions. *See* 45 U.S.C. § 152.  State law claims relating to "conduct during collective bargaining negotiations" are also preempted. *Lindsay*, 581 F.3d at 59-60 (explaining "that the imposition of additional state liability . . .  would upset the 'balance of power' established by the RLA and 'frustrate effective implementation of the Act's processes'" (internal citation and brackets omitted); *see also Cooper v. TWA*

13

*Airlines, LLC*, 349 F. Supp. 2d 495, 507-08 (E.D.N.Y. 2004) ("[S]tate law claims that are 'mere refinements' of the duty of fair representation are preempted."). Plaintiffs' claims against Local 210 implicate representations made during the process of negotiating and ratifying the collective bargaining agreement. The district court, therefore, correctly found those claims preempted by the RLA.

**II.    Applying a Three-Year Statute of Limitations**

The RLA does not specify the statute of limitations applicable to a claim for breach of the duty of fair representation. "In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). In *DelCostello*, the Supreme Court borrowed the six-month statute of limitations period in Section 10(b) of the National Labor Relations Act ("NLRA") and applied it to hybrid lawsuits, in which a party brings claims against both an employer and a union. *Id.* at 169-72. An example of a hybrid lawsuit is one in which employees sues their employer alleging a breach of the collective bargaining agreement and sue the union alleging a breach of its duty of fair representation by mishandling the ensuing grievance or arbitration

14

proceeding. *Id.* at 170. Our Court extended *DelCostello* by borrowing Section 10(b)'s six-month limitations for duty of fair representation claims where such claims "directly implicated the collective bargaining relationship." *Phelan v. Local 305 of United Ass'n of Journeymen*, 973 F.2d 1050, 1060 (2d Cir. 1992); *see also Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 219 (2d Cir. 1989) (applying six-month limitations period to duty of fair representation claim based on the union's failure to file a grievance on, or renegotiate the issue of, pilot seniority). The district court here relied on *Haerum* when it applied a six-month limitations period to Plaintiffs' claims without any further analysis, but *Haerum* interpreted claims brought under Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 *et. seq.*, which is not the statute at issue here.

Unlike the claims in *Phelan*, the claims in this appeal do not "directly implicate the collective bargaining relationship" and thus require a different approach. *Phelan*, 973 F.2d at 1060. We previously recognized that "[t]he problems in choosing the proper statute to borrow are compounded in the labor area," and thus we must "analyze [each] labor case on its facts before choosing which limitations period to borrow." *Id.* at 1058-59 (citing *Reed v. United Transportation Union*, 488 U.S. 319 (1983) (noting that the "Supreme Court has

rejected the argument that uniformity among borrowing limitations is needed among all labor cases . . .")). Moreover, "where (1) a federal rule of limitations clearly provides a closer analogy than state alternatives, and (2) the federal policies at stake and the practicalities of the litigation render the federal limitation 'a significantly more appropriate vehicle for interstitial lawmaking,'" we borrow the limitations period from federal law. *Id.* at 1058.

Here, Plaintiffs seek to hold Local 210 to a pledge they allege the union made, namely, a promise that if World Airways failed to fund the past service credits, Local 210 would fund those credits so that union members did not lose pension benefits because of the switch from the Target Benefit Plan to the Plan. Plaintiffs urge us to find that their claims most resemble a claim for pension benefits asserted under ERISA such that the appropriate statute of limitations to borrow is the three-year period set forth in Section 1113(2) of ERISA applies. We agree.

The Third Circuit took a similar approach in *Adams v. Gould Inc.*, which involved a settlement the union reached with the employer over collectively bargained pension benefits. 739 F.2d 858 (3d Cir. 1984). Briefly, the *Adams* plaintiffs—all former employees—alleged that the employer and union entered

16

into a settlement agreement that failed to comply with an arbitrator's award regarding the benefits. *Id.* at 861. The *Adams* plaintiffs alleged a violation of the collective bargaining agreement by the employer and a breach of the union's duty of fair representation. Defendants argued that the action was barred by the six-month statute of limitations contained in Section 10(b) of the NLRA. *Id.* at 866. The Third Circuit disagreed, finding the claims more akin to a pension claim implicated by ERISA such that borrowing the three-year limitations period in Section 1113(2) better furthered the federal policies at stake. *Id.* at 867.

In particular, the *Adams* Court noted that a hybrid lawsuit, such as the one at issue in *DelCostello*, "normally involves an issue that is intertwined with the day-to-day relationship between management and labor. Speed and finality in the resolution of disputes are the most relevant policies in those situations." *Id.* at 867. "In pension dispute[s], however, that policy is less relevant." *Id.* "The absence of an effect on their day-to-day working environment also makes it far more likely that employees will not be aware of their grievance immediately. These factors favor the application of a longer period of limitations." *Id.*

We adopt an approach similar to that of the Third Circuit. Since the claims at issue here do not touch on the relationship between an employer and the

17

union, but instead touch on the relationship between the employee and the union, the longer limitations period in ERISA is the appropriate period to borrow:

> We believe that there is a distinction between the implication of delay in resolving disputes over pension contribution issues and the implications of delay in resolving disputes over terms of a collective bargaining agreement that affect the day-to-day operations of a business. We also believe that this distinction justifies the use of a different limitations period.

*Id.*; *see also Phelan*, 973 F.2d at 1061 (holding Section 10(b) limitations period did not apply to claim alleging a breach of the union's constitution because "[r]esolution of claims concerning breach of a union constitution that do not relate to formation of a collective bargaining agreement [do] not have a direct and immediate impact on union-management relations").

We recognize that the Seventh Circuit declined to follow *Adams*, stating it was reluctant to apply different statutes of limitations to duty of fair representation claims that arise out of "the employment terms of collective bargaining agreements (and to the negotiations leading to them)" and to claims arising out of "the pension terms of the same agreements (arising from the same negotiations)." *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d

18

1262, 1273 (7th Cir. 1985); *see also Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 633 (9th Cir. 1990) (adopting Seventh Circuit's rationale in *United Independent* and applying a six-month limitation period to a hybrid RLA/ERISA claim).

Contrary to the Seventh Circuit, our Circuit previously endorsed choosing the appropriate statute of limitations to borrow based on the facts of a particular case, rather than applying a single limitations period to all labor claims. *See Phelan*, 973 F.2d at 1060-61. As discussed above, Plaintiffs here seek to hold Local 210 accountable for promises they allege Local 210 made to employees whom they represented in negotiations over their pensions. We believe this situation is different from plaintiffs who seek to challenge or enforce the terms of a collective bargaining agreement against the employer, as occurred in *Adams*. Accordingly, a three-year ERISA statute of limitations should be applied.

Applying the three-year ERISA statute of limitations allows Plaintiffs to bring suit within three years of "the earliest date on which the plaintiff had actual knowledge of the breach." 29 U.S.C. § 1113(2). The Plaintiffs discovered the past service credits were not funded in December 2012, when the Fund cancelled their credits. Plaintiffs sued in February 2015, thus making their claims timely.

### III. Whether Local 210's Promise is Enforceable

Local 210 argues in the alternative that, even if Plaintiffs' claims are timely, Plaintiffs do not set forth a legally sufficient cause of action because federal law bars the union from making such contributions to the Fund on behalf of the Plaintiffs. Local 210 argues that under the terms of the trust agreement governing the Fund and pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 401, contributions to the Fund may only be made by employers on behalf of employees. Thus, it argues, Local 210 could not legally fulfill the alleged promise and Plaintiffs' claims should be dismissed.

The district court did not address this argument, and we decline to do so for the first time here. Even assuming a payment by Local 210 into the Fund is not permissible, other remedies may be available to Plaintiffs. *See, e.g.,* App'x at 36 (including in prayer for relief a demand that Local 210 pay directly to Plaintiffs monies in an amount that compensates Plaintiffs for the lost past service credits). We leave this issue for consideration by the district court in the first instance.

20

## IV. Plaintiffs' ERISA claim against the Fund

Finally, Plaintiffs challenge the district court's dismissal of their claim against the Fund, brought pursuant to Section 502(a)(1)(B) of ERISA[1], on the ground that the actions of the Trustees were arbitrary and capricious. *Pruter*, 2016 WL 908303, at *2. Plaintiffs argue the district court erred in dismissing the claim because the Trustees failed to present the district court with an adequate administrative record. We disagree.

The administrative record "properly consists of the evidence before the entity that decided the claim when that decision was rendered." *Allison v. Unum Life Ins. Co.*, No. cv 04-0025, 2005 WL 1457636, * 9 (E.D.N.Y. 2005); *see also Ocampo v. Bldg. Serv. 32B–J Pension Fund*, 787 F.3d 638 (2d Cir. 2015) (rejecting a challenge to the administrative record in an ERISA case); *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013). All of the information considered by the Trustees is contained in the exhibits to the complaint and in the documents

---

[1] We, like the district court, construe Plaintiffs' claim against the Fund as a claim brought to enforce the right to benefits under a pension plan pursuant to Section 502(a)(1)(B) of ERISA. *See Pruter*, 2016 WL 908303, at *2 n.2.

21

attached as exhibits to the declaration submitted by the Fund in support of its motion to dismiss. There is no requirement that the administrative record be collated in a particular fashion or that it be produced via affidavit. So long as the district court is provided with all of the information considered by the Trustees in making their decision, the requirement for an administrative record is satisfied.

Plaintiffs also argue that the administrative record is incomplete because a letter stating that the Trustees had an actuary confirm that the required contributions were not made by either World Airways or Local 210 does not suffice. Plaintiffs argue that they were told their past service credits were fully funded, and that the Fund must demonstrate that is not true. However, a plaintiff bears the burden of demonstrating entitlement to ERISA benefits. *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 488 (2d Cir. 2013). Plaintiffs here lack any evidence that the requisite payments were made. The Trustees undertook an investigation and found no evidence to support Plaintiffs' claims. Plaintiffs were afforded multiple opportunities to supplement the administrative record with evidence to support their claim to benefits under the Plan, and failed to do so.

Accordingly, the district court did not err in dismissing the ERISA claim against the Fund.

## CONCLUSION

For the reasons set forth above, we **VACATE** the district court's dismissal of Plaintiffs' RLA claims against Local 210, **AFFIRM** the district court's dismissal of the Plaintiffs' ERISA claims against the Fund, and **REMAND** for further consideration of Plaintiffs' remaining claims consistent with this opinion.